# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-KA-01173-SCT

*JOHNNY EARL SIMMONS*

*v.*

*STATE OF MISSISSIPPI*

## ON MOTION FOR CLARIFICATION

| | |
|---|---|
| DATE OF JUDGMENT: | 08/22/96 |
| TRIAL JUDGE: | HON. JOHN H. WHITFIELD |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | THOMAS D. BERRY, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEAN SMITH VAUGHAN |
| DISTRICT ATTORNEY: | CONO A. CARANNA, II |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 8/5/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### EN BANC.

### SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:

¶1. The motion for clarification is granted. The original opinion in this case is withdrawn, and this opinion is substituted therefor.

¶2. Johnny Earl Simmons ("Simmons") was indicted for, and convicted by a jury of, transfer of cocaine, a Schedule II controlled substance. Simmons was sentenced by the trial court to serve a term of 13 years, with six years suspended, in the custody of the Mississippi Department of Corrections. Simmons was also sentenced to five years probation upon release, and to pay a $5000 fine. Simmons' motion for J.N.O.V. or new trial was denied by the trial court. Simmons also filed a motion to reconsider his sentence, and the trial court took that motion under advisement until a pre-sentence report was completed by MDOC. Simmons timely filed his Notice of Appeal, and seeks a reversal of his conviction and a remand for a new trial.

### STATEMENT OF THE FACTS

¶3. On May 19, 1995, Officer James Cuccia, of the Gulfport Police Department, was working undercover. Cuccia testified that on that day, he purchased cocaine from Simmons in an area called the "Quarter" in Gulfport. Officer Cuccia's vehicle, a Nissan van, was equipped with audio and video equipment to record any undercover buys.

¶4. Cuccia testified that he drove to the "Quarter" and stopped his vehicle in front of the Desire Lounge, where a group of men, including Simmons, was gathered. Some of the group, including Eric Smith, were about to approach Cuccia, when Simmons stopped them saying that Cuccia might be a policeman. Cuccia asked Simmons for a "twenty" or $20 worth of crack cocaine. Simmons asked Cuccia to get out of his vehicle. Cuccia exited his vehicle, and Eric Smith opened his hand to show Cuccia an alleged piece of crack cocaine. Cuccia grabbed it, and Simmons told Cuccia, "That's bunk." According to Cuccia, "bunk" is a term for counterfeit substance. Cuccia dropped the "bunk" back into Smith's hand, and then turned to Simmons. Simmons handed Cuccia crack cocaine, and Cuccia paid Simmons $20 from official city funds.

¶5. Cuccia identified Simmons in court as the man that sold him the crack cocaine. A video tape of the undercover buy was admitted into evidence at trial and shown to the jury. The substance, received by Cuccia from Simmons in the buy, was determined to be cocaine by the Mississippi Crime Lab.

¶6. The defense argued at trial that when Simmons stopped Smith from approaching Cuccia, he was really trying to prevent Smith from selling cocaine. Simmons and Smith, himself, testified that Smith sold the cocaine to Cuccia.

¶7. Simmons appeals from the jury verdict finding him guilty of transfer of a controlled substance, and assigns as error, the following issues for this Court's review.

**I. THE LOWER COURT ERRED IN COMMENCING THE TRIAL IN APPELLANT'S ABSENCE OVER OBJECTION OF COUNSEL.**

**II. THE LOWER COURT ERRED IN GIVING INSTRUCTIONS 5A, 5B, AND 5C, WHICH ARE INSTRUCTIONS ON BEING AN ACCESSORY NOT CHARGED IN THE INDICTMENT.**

**III. THE LOWER COURT ERRED IN ALLOWING COLLATERAL IMPEACHMENT OF DEFENSE WITNESS, ERIC SMITH, REGARDING HIS PRIOR YOUTH COURT RECORD.**

**IV. THE LOWER COURT ERRED IN ALLOWING INTO EVIDENCE AN ORDER PROCURED BY THE PROSECUTION FROM THE HARRISON COUNTY FAMILY COURT JUDGE, NOT A PART OF THE JUVENILE'S RECORD, BUT A REFLECTION OF THE FAMILY COURT JUDGE'S OPINION ABOUT ERIC SMITH AND HIS RECORD.**

**V. THE VERDICT OF THE JURY WAS AGAINST THE OVERWHELMING WEIGHT**

**OF THE EVIDENCE SO AS TO EVINCE BIAS AND PREJUDICE ON THE PART OF THE JURY.**

## DISCUSSION OF LAW

### I. THE LOWER COURT ERRED IN COMMENCING THE TRIAL IN APPELLANT'S ABSENCE OVER OBJECTION OF COUNSEL.

¶8. The trial of this case was originally set for July 22, 1996, as is noted on Simmons's waiver of arraignment and entry of plea form. On July 26, 1996, the trial court granted a defense motion for a continuance and reset the trial for August 9, 1996. Simmons's trial actually took place on August 21 and August 22 of 1996.

¶9. On August 21, 1996, at 9:00 a.m., the trial judge was preparing to voir dire the jury when he was interrupted by defense counsel. The following exchange occurred:

MR. BERRY: I hate to interrupt, but could you spare me a moment and let me go down the hall and see if my client is out there.

THE COURT: Make it a quick moment, Mr. Berry.

(PAUSE IN THE PROCEEDINGS)

MR. BERRY: Your Honor, the accused's mother is outside. She tells me he thinks it's 1:30.

THE COURT: That's fine. By the time we get ready to select a jury as long as he's here at that time, we're in good shape.

MR. BERRY: I apologize for that.

THE COURT: No apologies needed. Let's try it again...

Thereafter, the trial judge questioned the venire. When he was done, he started to allow the prosecutor to proceed with his voir dire, and defense counsel objected.

MR. BERRY: Just for the record, we would object to going any further at this time until my client would be present.

THE COURT: Mr. Berry, according to the law, as long as your client is present here at the time the jury is actually selected, we can proceed with this case. Your client was advised as to the time this case was to begin. We are not going to wait. If your client does not show, I will then issue a warrant for your client's arrest, and we will try the case starting tomorrow with a new jury. Your objection is noted for the record, sir.

MR. BERRY: We would ask for a mistrial due to the fact that you made these extraneous remarks in front of the jury. We feel like that would prejudice from the very start.

THE COURT: Your objection is so noted, Mr. Berry. Please be seated, sir.

From there, the district attorney conducted his voir dire of the jury. The record is unclear as to when the defendant, Simmons, actually arrived in court. However, it is clear that he was present at the time defense counsel started his voir dire.

¶10. Simmons argues that the trial court erred in allowing his trial to proceed outside of his presence. His argument is based on our decisions in *Sandoval v. State,* 631 So. 2d 159 (Miss. 1994) and *Jackson v. State,* 689 So. 2d 760 (Miss. 1997). The State asserts that Simmons was in constructive custody at the time of the trial, because he was out on bond, and that he simply chose not to appear at the appointed time of his trial. It argues that Simmons has failed to demonstrate any harm or prejudice resulting from his not being present for part of voir dire. Ultimately, the State urges this Court to return to the procedures for reviewing trials conducted in absentia enunciated in *Samuels v. State,* 567 So. 2d 843 (Miss. 1990).

¶11. Miss. Code Ann. § 99-17-9 (1994), which is entitled "Trial in the absence of accused," provides:

> In criminal cases the presence of the prisoner may be waived, and the trial progress, at the discretion of the court, in his absence if he be in custody, and consenting thereto. If the defendant, in cases less than felony, be on recognizance or bail or have been arrested and escaped, or have been notified by the proper officer of the pendency of the indictment against him, and resisted or fled, or refused to be taken, or be in any way in default for nonappearance, the trial may progress at the discretion of the court, and judgment final and sentence be awarded as though such defendant were personally present in court.

¶12. We examined this statute in *Samuels v. State*, 567 So. 2d 843 (Miss. 1990). In that case, Samuels, who had executed a recognizance bond, appeared at the courthouse the morning of his trial, but left at some point. Defense counsel announced ready for trial. When Samuels's attorney went to get Samuels, he could not find him. It was soon reported that Samuels had left the courthouse. Defense counsel requested a continuance, which was granted, and the trial was reset. The trial court issued a bench warrant for Samuels's arrest. At the next trial date, Samuels had not been arrested and again failed to appear for trial. The court denied defense counsel's motion for a continuance and proceeded with the trial. *Samuels,* 567 So. 2d at 844-45.

¶13. This Court, in a unanimous decision, held that when Samuels executed a recognizance bond, he was in the custody of the law under the statute. Additionally, the Court stated that because Samuels's absence was voluntary, he had waived his right to be present at trial. Therefore, the Court reasoned that the trial court did not abuse its discretion in proceeding to trial without the presence of the defendant. *Id.* at 845-46.

¶14. The next time the Court examined this issue was in *Sandoval v. State,* 631 So. 2d 159 (Miss. 1994). Sandoval appeared at a preliminary hearing and was in his attorney's office involved in trial preparation the day before the trial. When Sandoval failed to appear the morning of the trial, his attorney moved for a continuance, which the trial court denied. The trial court, basing his ruling on *Samuels,* found that Sandoval had voluntarily absented himself and had, therefore, waived his presence at trial. *Sandoval,* 631 So. 2d at 160-61.

¶15. We recognized in *Sandoval* that, "an accused felon, present at the commencement of his trial, may thereafter waive his presence by absenting himself from the trial." *Id.* at 161. However, in cases where the accused is not present at the commencement of trial, the waiver issue is more complex. We found that the facts in *Sandoval* were significantly different than the facts in *Samuels.* Sandoval did not appear at the

commencement or any other stage of the trial, and the defense did not announce ready for trial. Defense counsel moved for a continuance, and it was immediately denied. *Sandoval,* 631 So. 2d at 161. In a 6-3 decision (Smith, J. dissenting, joined by Prather, P.J. and Roberts, J.), we held that "Mississippi Code Annotated § 99-17-9 (1972) clearly states the waiver rule in felony cases 'if he be in custody and consenting thereto' and then makes an exception for misdemeanors. Only in discussing 'cases less than felony' does the statute permit trial in absentia of defendant 'on recognizance or bail.'" *Id.* at 164. The Court found that the trial court had erred in denying Sandoval a continuance, and the case was reversed and remanded. *Id.*

¶16. Since *Sandoval*, we have consistently reversed and remanded cases where the defendant is tried in absentia. In *Banos v. State,* 632 So. 2d 1305 (Miss. 1994), neither of the two defendants were present at the commencement of trial, and this Court found that the facts were no different from *Sandoval.* In a unanimous decision, the Court held that *Sandoval* was controlling and reversed and remanded. *Banos,* 632 So. 2d at 1309.

¶17. In *Villaverde v. State,* 673 So. 2d 745 (Miss. 1996), the Court, in another unanimous decision (Pittman, J. specially concurring, joined by Mills, J.), recognized that *Samuels* had been overruled, and that defendants charged with felonies may not be tried in absentia. *Villaverde,* 673 So. 2d at 747. The case was reversed and remanded because Villaverde, an accused felon, had been tried in absentia. *Id.*

¶18. Finally, in *Jackson v. State,* 689 So. 2d 760 (Miss. 1997), we again examined this issue. Due to an early morning brawl between the two defendants on the day of trial, one arrived in court during selection of the jury panel, and the other arrived during cross-examination of the State's second witness. *Jackson,* 689 So. 2d at 763. The defense requested a continuance, which the trial court denied. In a 5-4 decision (Pittman, J. dissenting, joined by Roberts, Smith, and Mills, JJ.), we said:

> This Court's prior decision in *Samuels v. State,* 567 So. 2d 843 (Miss. 1990) was superseded by *Sandoval* to the extent that *Samuels* does not require a defendant to be present during the commencement of trial for his waiver to be effective.
>
> In the present case, Larry arrived at trial during cross-examination of the State's second witness. Because he did not arrive until well after the commencement of trial, it cannot be said that he waived his right to be present at trial. Alvin arrived during the selection of the jury panel after voir dire was completed. Nonetheless, like Larry, Alvin was not present when trial commenced and cannot be deemed to have waived his right to be present. Since neither can be said to have waived his right to be present at trial, this case must be reversed for a new trial.

*Id.* at 764.

¶19. The dissent argued that:

> Thus, under today's holding a defendant could absent himself at the commencement of trial and later appear (e.g., during voir dire) for the trial in its entirety. However, the trial will be for naught because the defendant was not there at the commencement and thus, we will reverse and remand for a new trial, holding it was held in his absence without the defendant properly waiving his right to be present.
>
> The majority has effectively put the defendants in charge of the courtroom. No longer will trials begin

when docketed and the lawyers, judge, and jury are ready; now, we will wait until the defendant decides he is ready to appear in court and face his charges. It is likely that many defendants do not want to go to trial for fear of the outcome. We have now provided a convenient option for such defendants-do not appear in court. The defendants sub judice were free from incarceration because of a recognizance bond. They knew when to be in court and they willfully absented themselves from court. Thus, under *Samuels* and Miss. Code Ann. § 99-17-9 (1972), they may be deemed properly before the court or to have waived that right and it was not error to proceed without them.

*Id.* at 770.

¶20. The State, in the case *sub judice,* urges this Court to return to the procedures of *Samuels*, and hold that Simmons was constructively in custody and chose not to appear at the appointed time of trial, thereby waiving his right to be present.

¶21. Although we do not today overrule *Sandoval* and its progeny, we do take this important opportunity to expand its holding. We hold today that in the limited circumstance where the defendant, who is out on bond and represented by counsel, fails to appear at the commencement of his trial, but appears before any evidence is taken, we will not reverse for a new trial, unless the defendant shows prejudice resulting from his absence at the commencement of the trial. Therefore, we must discern whether Simmons suffered some prejudice resulting from the trial court's decision to proceed in his absence in this case.

¶22. The extraneous comments made by the judge regarding Simmons's absence were unwarranted in the presence of the jury. "Jurors are most susceptible to the influence of the judge; he cannot be too careful and guarded in his language and conduct in the presence of the jury." *Beyersdoffer v. State*, 520 So. 2d 1364, 1366 (Miss. 1988); *See also Yelverton v. State*, 191 So. 2d 393, 397 (Miss. 1966) (explaining that a judge, "because of the attributes of the offices they hold, unconsciously exert tremendous influence in the trial of a case, and they should be astutely careful so that unintentionally the jurors are not improperly influenced by their words and actions.") (*quoting Roberson v. State*, 185 So. 2d 667, 670 (Miss. 1966)). Some of the jurors may have found that based on the judge's comments, Simmons deliberately failed to show up for court in an effort to have the trial continued. This could cause the jury to harbor ill will toward Simmons before the jury is even sworn. "The trial judge always must be circumspect and unbiased, at all times displaying neutrality and fairness in the trial, and consideration for the constitutional rights of the accused." *Fermo v. State*, 370 So. 2d 930, 933 (Miss. 1979). Prior to the judge's comment, the judge was aware that Simmons did not willfully fail to show up at the commencement of the trial when Simmons's attorney told the judge that his client thought the trial was to begin at 1:30. Furthermore, an Order dated on August 20, 1996, stated that the trial was to commence at 1:00 on Wednesday, August 21, 1996. Apparently, the time for the trial to begin was subsequently changed. Simmons argues on appeal that particularly in a felony criminal trial, it is important to determine whether any of the jurors recognize the defendant. We agree that it is necessary to determine if any of the jurors know the defendant or have a significant relationship to the defendant in determining who shall serve on the petit jury.

¶23. The United States Supreme Court recognizes that "the right to personal presence at all critical stages of the trial and the right to counsel are fundamental rights of each criminal defendant." *Rushen v. Spain*, 464 U.S. 114, 117 (1983). Voir dire is considered by this Court as "a most critical stage" of the criminal proceedings. *Bell v. Watkins*, 381 So. 2d 118, 134 app. (Miss. 1980). A defendant has a constitutional

right to be present although a defendant can waive this important right. The United States Supreme Court explained the significance of this Sixth Amendment right as follows:

> Even though it is true that a criminal trial does not commence for purposes of the Double Jeopardy Clause until the jury is empaneled and sworn, *Serfass v. United States*, 420 U.S. 377, 388 (1975), other constitutional rights attach before that point, *see, e.g.*, *Brewer v. Williams*, 430 U.S. 387, 398 (1977) (assistance of counsel). Thus in affirming voir dire as a critical stage of the criminal proceeding, during which the defendant has a constitutional right to be present, the Court wrote: "'[W]here the indictment is for a felony, the trial commences at least from the time when the work of empanelling the jury begins.'". . . . Jury selection is the primary means by which a court may enforce a defendant's right to be tried by a jury free from ethnic, racial, or political prejudice, . . ., or predisposition about the defendant's culpability. . . .

*Gomez v. United States*, 490 U.S. 858, 872 (1989).

¶24. Based on the facts that 1) Simmons was not present during at least a part of the State's questioning of potential jurors, 2) Simmons did not wilfully refuse to show up for trial in an effort to abuse the judicial system, and 3) the trial judge made extraneous comments in the presence of the jury that may have predisposed the jury against Simmons from the very start, Simmons has shown that he was prejudiced, thereby satisfying the extended holding we create today. Accordingly, we reverse and remand for a new trial.

¶25. Because we have reversed and remanded this case on Issue I, it is unnecessary for this Court to address the remaining issues.

## CONCLUSION

¶26. We part slightly today from our prior holdings concerning trial in absentia. Although we are not overruling *Sandoval* and its progeny or reviving *Samuels,* we do expand *Sandoval* to require a defendant who voluntarily absents himself from the commencement of his trial and who later appears for trial before any evidence is taken, to demonstrate to this Court what prejudice he has suffered through his absence. If such prejudice is not shown, this Court will not reverse for a new trial.

¶27. Simmons has proven prejudice as a result of the judge's extraneous remarks. Accordingly, we reverse and remand for a new trial.

¶28. **REVERSED AND REMANDED.**

**PRATHER, C.J., PITTMAN, P.J., BANKS, McRAE, MILLS AND WALLER CONCUR. SMITH, J. CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY COBB, J. WALLER, J., JOINS THIS OPINION IN PART.**


**SMITH, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶29. I concur in the judgment to reverse and remand for a new trial. In our original opinion issued on May 13, 1999, the majority addressed the aiding and abetting instruction issue and concluded that the evidence

was sufficient to support the instruction. The State, on June 14, 1999, filed a Motion for Clarification or Correction of Opinion before this Court. The State asks for clarification regarding the aiding and abetting instructions that are given to a jury. The majority now elects not to address the aiding and abetting issue. In my view, the aiding and abetting issue is properly before this Court, and because the majority's mandate is to reverse and remand, guidance on this issue is a necessity because the issue is bound to reoccur and prosecutors and circuit judges need guidance on what this Court will recognize as a proper aiding and abetting instruction.

¶30. Apparently, there is some inconsistency between our previous opinion in this case and our previous opinion in *Hornburger v. State*, 650 So.2d 510 (Miss. 1995). The same jury instruction that was given in the case sub judice was also given in the *Hornburger* case. However, the instruction was found to be defective but harmless in *Hornburger*, but was not found defective in the present case. This Court stated that the problem with the instruction given in *Hornburger*, was that it "allowed the jury to find [the defendant] guilty of burglary if it found that he had done any act which was merely an element of burglary, without having to also find that he committed acts for all elements of the crime." *Doss v. State*, 709 So.2d 369, 379 (Miss. 1997).

¶31. In the case sub judice, the same problem is present. Again, jury instruction "5C" leads the jury to believe that, if only one element of the crime is proven beyond a reasonable doubt, the defendant can be convicted of that crime. The problem with instruction "5C" is that it says in pertinent part that:

> The Court instructs the Jury that each person present at the time, and consenting to and encouraging the commission of a crime, and knowingly, willfully and feloniously doing *any* act which is an element of the crime or immediately connected with it, or leading to its commission, is as much a principal as if he had with his own hand committed the whole offense. . .[emphasis added]

This is improper because **every** element of the crime must be proven beyond a reasonable doubt before the defendant can be convicted of that crime. *See Sullivan v. Louisiana*, 508 U.S. 275, 277-78 (1993). According to the instruction given in the case sub judice, satisfaction of only one element would suffice for a conviction. This is a contrary instruction to the 5th Circuit's Pattern Jury Instruction (Criminal Cases) 2.06 for Aiding and Abetting (Agency)(1997)(18 U.S.C. § 1) which states, as follows:

> The guilt of a defendant in a criminal case may be established without proof that the defendant personally did **every** act constituting the offense alleged. The law recognized that, ordinarily, anything a person can do for himself may also be accomplished by that person through the direction of another person as his or her agent, or by acting in concert with, or under the direction of, another person or persons in a joint effort or enterprise.

> If another person is acting under the direction of the defendant or if the defendant joins another person and performs acts with the intent to commit a crime, then the law holds the defendant responsible for the acts and conduct of such other persons just as though the defendant had committed the acts or engaged in such conduct.

> Before any defendant may be held criminally responsible for the acts of others it is necessary that the accused deliberately associate himself in some way with the crime and participate in it with the intent to bring about the crime.

Of course, mere presence at the scene of a crime and knowledge that a crime is being committed are not sufficient to establish that the defendant committed are not sufficient to establish that a defendant either directed or aided and abetted the crime unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator.

In other words, you may not find any defendant guilty unless you find beyond a reasonable doubt that **every** element of the offense as defined in these instructions was committed by some person or persons, and that the defendant voluntarily participated in its commission with the intent to violate the law.

(emphasis added).

¶32. It is clear from the model instruction that **every** element of an offense must be satisfied beyond a reasonable doubt before the defendant can be found guilty. To the contrary, the instruction given in the case sub judice establishes that ". . .doing **any** act which is an element of a crime . . ." can lead to the guilt of the defendant. This instruction is inconsistent with the 5th Circuit's Pattern Jury Instructions as well as with the established case law of *Hornburger v. State*, 650 So.2d 510 (Miss. 1995).

¶33. The State has reasonably asked for clarification of this Court's ruling with regard to whether the *Hornburger* instruction constitutes error. The State needs this clarification to prevent future error, and this Court should provide the State with the proper clarification in the interest of justice. The majority has elected not to address this issue, but in doing so we are inviting the continued use of an erroneous jury instruction. In my view the 5th Circuit's Pattern Jury Instruction should be adopted by this Court to prevent further confusion on the issue.

**COBB, J., JOINS THIS OPINION. WALLER, J., JOINS THIS OPINION IN PART.**