# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-KA-01075-SCT

*MERLINDA BERRY*

*v.*

*STATE OF MISSISSIPPI*

## CONSOLIDATED WITH

## NO. 96-KA-01294-SCT

*MERLINDA BERRY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/30/96 |
| TRIAL JUDGE: | HON. ROBERT G. EVANS |
| COURT FROM WHICH APPEALED: | JASPER COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | LESLIE GATES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: CHARLES W. MARIS, JR. |
| DISTRICT ATTORNEY: | DEWITT L. FORTENBERRY, JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 01/14/99 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/8/99 |

**BEFORE SULLIVAN, P.J., BANKS AND ROBERTS, JJ.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Merlinda Berry was indicted on August 9, 1993, along with Rayford Jordan, in the Jasper County Circuit Court for transfer of cocaine on or about January 7, 1993. Jordan pled guilty to the charge, and Berry proceeded to trial. The evidence showed that on the evening of January 7, 1993, Homer Kemp, an undercover officer with the Jasper County Sheriff's Department, went to Jordan's home and asked him about making a drug purchase. Jordan did not have any drugs to sell him, but got into Kemp's car with him

and directed him to Berry's house. Kemp gave Jordan thirty dollars, which he used to buy a couple of pieces of crack cocaine from Berry. Jordan then handed the crack over to Kemp. Both Kemp and Jordan testified to these facts at Berry's trial. Berry testified on her own behalf and stated that Jordan and Kemp came to her house on the night in question wanting to buy drugs, but denied selling either of them any crack cocaine.

¶2. The jury found Berry guilty of transfer of cocaine, and Circuit Court Judge Robert G. Evans sentenced her to serve an eight-year sentence. Berry appeals to this Court, assigning as error violation of her statutory and constitutional speedy trial rights, insufficient jury instructions on the definition of an accessory, and the discriminatory use of peremptory challenges in her case. We find that Berry's assertions have merit and therefore must reverse this case and remand it to the Jasper County Circuit Court for further proceedings.

## STATEMENT OF THE LAW

### I.

### WAS THE APPELLANT DENIED HER STATUTORY AND CONSTITUTIONAL SPEEDY TRIAL RIGHTS SUCH THAT THE INDICTMENT SHOULD HAVE BEEN DISMISSED?

¶3. On August 16, 1996, Judge Evans held a hearing on Berry's motion to dismiss based upon violation of her right to a speedy trial. At the close of the hearing, Judge Evans advised Berry's counsel that he could call the court on the following Monday to obtain a ruling on the motion before trial was to begin on Tuesday. The record contains no order on Berry's motion to dismiss. The State contends that Berry's failure to obtain a ruling on her motion to dismiss precludes her from raising this issue on appeal. "The record does not reflect that any order was entered on the motion to change venue. It is the responsibility of the movant to obtain a ruling from the court on motions filed by him and failure to do so constitutes a waiver of same." *Martin v. State*, 354 So.2d 1114, 1119 (Miss. 1978). *See also* **Holly v. State**, 671 So.2d 32, 36 (Miss. 1996)(failure to obtain ruling on motion in limine results in procedural bar). However, the right to a speedy trial is a fundamental constitutional right, and a defendant may only waive her speedy trial right by knowing and intelligent waiver.

> [T]he right to a speedy trial is subject to a knowing and intelligent waiver. *Vickery*, 535 So.2d at 1377. This Court will "indulge every reasonable presumption against the waiver of a constitutional right."*Id*., *quoting* **Aetna Ins. Co. v. Kennedy**, 301 U.S. 389, 393, 57 S.Ct. 809, 812, 81 L.Ed. 1177, 1180 (1937). Even when a defendant fails to assert his right to a speedy trial he does not permanently waive this right. *Vickery*, 535 So.2d at 1377.

*Jenkins v. State*, 607 So.2d 1137, 1140 (Miss. 1992). We find that Berry did not waive her right to a speedy trial in this case. The trial court erred in failing to enter a ruling in the record on Berry's motion to dismiss. As a result, we must remand this case to the circuit court for further proceedings on this matter.

### II.

### DID THE TRIAL COURT COMMIT PLAIN ERROR IN GRANTING JURY INSTRUCTION S-3, WHICH RELIEVED THE STATE OF THE FUNDAMENTAL REQUIREMENT OF PROVING EVERY ELEMENT OF THE CHARGE?

¶4. Without objection by Berry, the jury was given Instruction S-3 on the definition of an accessory. That

instruction reads as follows:

> The Court instructs the jury that each person present at the time, and consenting to and encouraging the commission of a crime, and knowingly, willfully and feloniously doing any act which is an element of the crime, or immediately connected with it, or leading to its commission, is a principal.
>
> One who aids, assists and encourages a transfer of cocaine is a principal and not an accessory, and his guilt in nowise depends upon the guilt or innocence, the conviction or acquittal of any other alleged participant in the crime. Therefore if you believe from the evidence, beyond a reasonable doubt, that Merlinda Berry did willfully, unlawfully and feloniously do any act which is an element of the crime of transfer of cocaine, as defined by the Court's instructions, or immediately connected with it, or leading to its commission, then and in that event, you should find Merlinda Berry guilty of transfer of cocaine as charged in the indictment.

¶5. Berry maintains that this instruction is insufficient in that it does not require the jury to find that the crime was actually completed. Berry also asserts that the instruction unconstitutionally relieves the State of its burden to prove every element of the crime beyond a reasonable doubt. The State's position is that read as a whole, the jury instructions adequately informed the jury of the State's burden, because additional instructions (Instructions S-2, D-2, C-5, and C-2) instructed the jury on the elements of transfer of cocaine and the State's burden of proving each element beyond a reasonable doubt.

¶6. Ordinarily, failure to object to a given instruction at trial results in a procedural bar on appeal, unless its granting amounts to plain error. *Sanders v. State*, 678 So.2d 663, 670 (Miss. 1996) ("As a rule, the Supreme Court only addresses issues on plain error review when the error of the trial court has impacted upon a fundamental right of the defendant"); *Walker v. State*, 671 So.2d 581, 606 (Miss. 1995). In this case, the granting of Instruction S-3 amounts to plain error, because the jury was not fully instructed on the elements of the crime. *Hunter v. State*, 684 So.2d 625, 636 (Miss. 1996) ("Failure to submit to the jury the essential elements of the crime is 'fundamental' error.").

¶7. In *Simmons v. State*, 568 So.2d 1192 (Miss. 1990), the defendant similarly argued that a nearly identical accessory instruction for the crime of kidnapping "implies that the jury could convict her if only one element of the crime charged was proven," relieving the State of its burden to prove every element of the crime beyond a reasonable doubt. *Simmons*, 568 So.2d at 1203-04. We held that the language in the accessory instruction, together with additional instructions informing the jury that the State was required to prove every element of the crime beyond a reasonable doubt, properly instructed the jury. *Id*.

¶8. Again, in *Hornburger v. State*, 650 So.2d 510 (Miss. 1995), the defendant made the same argument as in *Simmons* regarding the accessory instructions in his case. *Hornburger*, 650 So.2d at 514-15. We pointed to our decisions in *Simmons* and the similar cases of *Davis v. State*, 586 So.2d 817, 821 (Miss. 1991) and *Kelly v. State*, 493 So.2d 356, 359 (Miss. 1986), and found, "Nevertheless, while similar instructions have been approved in *Simmons*, *Kelly*, and *Davis*, the jury was improperly instructed in the case sub judice with regard to instruction S-8." *Id*. at 515. We went on to hold that the error was harmless, because other instructions informed the jury of the State's burden of proving every element beyond a reasonable doubt. *Id*.

¶9. In this case, however, we find that reading the instructions as a whole did not cure the error resulting from the improper instruction. The jury was in fact informed of the elements of transfer of cocaine and the

State's burden of proof in this case in instructions other than S-3. The problem with the offending instruction is that it appears to give the jury an additional option of finding the defendant guilty if she committed only one element of the crime without even finding that the crime was ever completed. Even if the jury read all of the instructions together, they could still be misled into believing that Instruction S-3 was merely another option in addition to the choice of finding that Berry committed all of the elements of the crime herself. We find that the instruction on an accessory in this case was confusing and misleading, and therefore requires reversal. *Brazile v. State*, 514 So.2d 325, 326 (Miss. 1987) ("inaccurate and confusing nature" of instruction requires reversal and remand for a new trial).

## III.

## DID THE TRIAL JUDGE ERR IN OVERRULING DEFENSE OBJECTION TO THE STATE'S PEREMPTORY STRIKE OF AN UNEMPLOYED BLACK WOMAN BASED ON HER BEING UNEMPLOYED IN CONSIDERATION OF THE FACT THAT THE STATE PASSED ON AN OPPORTUNITY TO STRIKE AN UNEMPLOYED WHITE WOMAN?

¶10. During jury selection the prosecution used all six of its peremptory strikes against black members of the venire. Berry objected on the grounds that the State was using its challenges in a discriminatory manner, in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). Judge Evans conducted a *Batson* hearing, and the State articulated sufficient race-neutral reasons, undisputed by Berry, for each of its challenges with the exception of its challenge against Juror No. 14, Rose Morgan. The State asserted that the reason it struck Juror Morgan was because she was an unemployed housewife. However, because the State had not struck a white female juror, Juror No. 17, Sharon James, who was also a housewife, Judge Evans held that the strike against Juror Morgan could not stand. The State then proceeded to use its last strike against Juror No. 19, Arlene Jenkins, a black female, again on grounds that she was a housewife and unemployed. Berry again objected to the State's challenge on grounds that the State had not struck the white housewife, Ms. James. The following exchange then took place:

> THE COURT: You said earlier that she was a white female is what you said.
>
> MR. DRUHET: Which one?
>
> THE COURT: 19.
>
> MR. DRUHET: 19 is a black female.
>
> THE COURT: Which is it, Mr. Webb?
>
> MR. WEBB: I've got her listed as a black female.
>
> THE COURT: Oh, okay. I understood she was a white female.
>
> MR. DRUHET: No, sir.
>
> THE COURT: Okay. I'll allow the strike then.

Berry contends that allowing the State's strike against Juror Jenkins was a violation of *Batson*.

¶11. The State maintains that the record is inadequate for this Court to reverse on this issue, because there

is no listing of the jurors, and there is no evidence of the racial composition of the jury or the venire. However, the ***Batson*** test does not require analysis of the racial composition of the jury and the venire. Instead, to successfully assert her ***Batson*** claim, Berry must prove the following:

> First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.

***Hernandez v. New York***, 500 U.S. 352, 358-59 (1991) (citations omitted). The focus of the ***Batson*** inquiry is on the purposeful discrimination in a party's use of peremptory challenges, not on the ultimate racial composition of the jury. ***Sudduth v. State***, 562 So.2d 67, 71 (Miss. 1990). Here, Berry met her burden of proving that the State exercised its peremptory challenges on the basis of race, because the State used all six of its peremptories against black members of the venire. The State did articulate race-neutral reasons for its strikes. However, we find that Berry successfully rebutted the State's asserted race-neutral reason for striking Juror Jenkins, because the State did not strike a similarly situated white juror, Juror James. One of the recognized indicia of pretext is "disparate treatment, that is, the presence of unchallenged jurors of the opposite race who share the characteristic given as the basis for the challenge." ***Mack v. State***, 650 So.2d 1289, 1298 (Miss. 1994). We find that the State's proffered reason for striking Juror Jenkins was pretextual.

¶12. The State also tries to write off the trial judge's inconsistency by stating that his ruling "simply does not add up" and "makes no sense in the context of the discussion." That is exactly the point that Berry is trying to make here. Allowing the strike against Juror Jenkins to stand once it was established that she was a black female makes no sense, particularly in light of the court's decision to reject the State's challenge of Juror Morgan. It appears that the trial judge was merely confused over the racial identifications of the jurors involved in the discussion. However, just because the ruling was made inadvertently does not make it any less erroneous. We hold that the trial court's decision to allow the strike against Juror Jenkins violated the principles in ***Batson***, requiring reversal and remand for a new trial. ***Batson***, 476 U.S. at 99.

## CONCLUSION

¶13. In light of the many errors outlined above in this case, we are compelled to reverse Berry's conviction and remand this case to the Jasper County Circuit Court for a new trial.

¶14. **REVERSED AND REMANDED**.

**PRATHER, C.J., PITTMAN, P.J., BANKS, McRAE, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR.**