# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-KA-00097-SCT

*TIMOTHY JOHN MILANO*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/19/1998 |
| TRIAL JUDGE: | HON. EDWIN C. HARDIN |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ROSS PARKER SIMONS |
| | ROBERT JAMES KNOCHEL |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  CHARLES W. MARIS, JR. |
| DISTRICT ATTORNEY: | KEITH MILLER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED- 04/26/2001 |
| MOTION FOR REHEARING FILED: | 5/29/2001; denied 7/26/2001 |
| MANDATE ISSUED: | 8/2/2001 |

EN BANC.

SMITH, JUSTICE, FOR THE COURT:

¶1. Timothy John Milano ("Milano") was convicted in the Circuit Court of Jackson County of the crimes of capital murder and kidnaping. Milano was sentenced to serve life in prison without the possibility of parole for capital murder and thirty years for kidnaping, with both sentences to run consecutively. Milano appeals, alleging several assignments of error. We find there were no errors at the trial court. Therefore, the judgment of the Jackson County Circuit Court is affirmed. However, because of continuing confusion with improper instructions concerning aiding and abetting, this Court adopts the Fifth Circuit Court of Appeals Pattern Jury Instruction on Aiding and Abetting.

## FACTS

¶2. The Jackson County Grand Jury indicted Milano and Gary Simmons in a three-count indictment for capital murder, kidnaping, and rape. Simmons was tried, convicted of all three counts, and sentenced to the death penalty. Simmons's appeal is still pending before this Court. The prosecution announced its intent to dismiss the rape charge against Milano the morning of his trial on July 27, 1998, at which time he was tried on the remaining two counts. Milano was subsequently convicted of capital murder and kidnaping and sentenced to life in prison without the possibility of parole and 30 years, respectively, with the sentences to be served consecutively.

¶3. The victims in this case are Jeffrey Wolfe, marijuana dealer from Houston, Texas, and Charlene Leaser, a female friend of Wolfe's from Texas with whom he had become close friends "a couple of weeks" prior to

coming to Mississippi. In the past, Wolfe or someone acting on his behalf, would bring marijuana to Simmons's house, and Simmons would sell it for him. Simmons would accept the marijuana on consignment, and then his brother-in-law, Milano, would sell the marijuana for Simmons. Milano would then pay Simmons, who would in turn pay Wolfe. Wolfe would periodically return to Mississippi to collect his money.

¶4. On August 13, 1996, Wolfe and Leaser arrived in Jackson County, Mississippi, to collect money owed to Wolfe from Simmons in return for drugs left in Simmons's possession. According to Milano, Simmons did not have all of the money owed to Wolfe. That night, Wolfe and Leaser had dinner with Milano's brother, Sonny Milano, and another female.[1] After dinner, Wolfe and Leaser twice drove by Simmons's house, found no one home on either occasion, and returned to their hotel room to wait for Simmons to return.

¶5. In the meantime, Simmons telephoned Milano, who then arrived at Simmons's residence. Sonny Milano arrived shortly thereafter, and the Milano brothers left. Milano did not return until after Wolfe and Leaser arrived at Simmons's house.

¶6. After a phone call, Wolfe and Leaser left the hotel and drove to Simmons's house. Leaser and Simmons smoked marijuana that Leaser had brought with her from Texas. While the three were outside on the porch, Milano arrived and went inside after being introduced to Leaser. Wolfe, Leaser and Simmons then went inside so that Simmons could get a beer for everyone, and Leaser wanted to roll another marijuana cigarette. The testimony indicates that, at the time they entered the house, there were no signs of a confrontation, and the mood was amicable.

¶7. Here the facts are in dispute. Leaser testified that she was seated at the kitchen table rolling the cigarette when she heard gunshots. According to Leaser, Milano was in the living room, Wolfe was standing in the doorway between the kitchen and the living room, and Simmons was near her, in front of the refrigerator. Without warning, Milano shot Wolfe while his back was turned, and Simmons grabbed her and took her to the back of the house.

¶8. Leaser ducked and looked up to see Wolfe fall and Milano holding a gun. Simmons then carried her into a back room, where he laid her on the floor, got on top of her and began asking her why she was there and if she or Wolfe were police officers. Simmons then bound Leaser with rope and locked her in a metal box. While tied up in the metal box, Leaser managed to untie herself and began kicking the walls of the box. Simmons then opened the box, retied her, and returned her to the box. Leaser untied herself again, and Simmons removed her from the box and raped her. He then tied her up again and returned her to the box.

¶9. According to Milano, upon entering the house the entire group went into the kitchen, where they remained until the shooting. He testified that he and Wolfe were talking about Houston and that he had made plans with Wolfe to return to Houston with him the next day. Wolfe then began asking Milano about the money he was owed. According to Milano, Wolfe was "kind of mad" because Simmons did not have all of his money, and said as much to Simmons, who went to a back room, ostensibly to get the money. "The next thing I know all I heard was gunshots, and I saw Jeff (Wolfe) fall to the floor. I was dumbfounded . . .." Simmons then grabbed Leaser and took her to a back room.

¶10. Simmons returned from the back room and dragged Wolfe's body into a bathroom. Simmons, a butcher by trade, began dismembering the body and ordered Milano to wait in the living room. During the dismemberment of the corpse, Simmons took a break to go to the back room, where he raped Leaser.

Simmons invited Milano to rape her as well, which he did not. Milano testified that he did not enter the back room after Simmons had taken Leaser into the room.

¶11. The two then carried Wolfe's dismembered body in buckets to a bayou behind Simmons's house and dumped the remains. Milano testified that Simmons forced him to carry the buckets, clean up the boat after they had disposed of the remains, and clean up the floors and the bathroom inside the house.

¶12. At some point during the night or early morning hours, Simmons and Milano retrieved Wolfe's and Leaser's possessions from the hotel room where they had been staying, and Simmons took Milano home. While still in the metal box, Leaser heard the telephone ringing but noticed it was not answered. She assumed the house was empty. She began kicking the walls of the box and eventually broke free. Once free, Leaser dressed, grabbed a butcher knife, and ran to a neighbor's house. The neighbor refused to let her inside the house but did call the police for her. While waiting for the police in front of the neighbor's house, Leaser saw Simmons return home, enter the house, and quickly leave.

¶13. When the police arrived, Leaser told them that Milano and Simmons killed Wolfe. She then took them inside Simmons's house. The officers searched the house and yard and later found Wolfe's remains in the bayou.

## DISCUSSION OF LAW

## STANDARD OF REVIEW

¶14. "When considering a challenge to a jury instruction on appeal, we do not review jury instructions in isolation; rather, we read them as a whole to determine if the jury was properly instructed." ***Burton ex rel. Bradford v. Barnett***, 615 So.2d 580, 583 (Miss. 1993). Similarly, this Court has stated that "[i]n determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." ***Coleman v. State***, 697 So.2d 777, 782 (Miss. 1997) (quoting ***Collins v. State***, 691 So.2d 918 (Miss. 1997)). In other words, if all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results.

## I.

¶15. The first issue presented to this Court is whether jury instructions S-13 and S-14, read together with the other instructions, fairly announced the law. We find that they did.

¶16. Over the objection of defense counsel, the trial court allowed instructions S-13 and S-14 on aiding and abetting. These instructions are identical, except that S-13 applies to capital murder and S-14 applies to kidnaping, the relevant text of which is set out below:

> If you believe from the evidence beyond a reasonable doubt that the Defendant, Timothy John Milano, did willfully, unlawfully and feloniously **do any act which is an element** of (capital murder/kidnaping) with which he is charged, or, immediately connected with it, or, leading to its commission, then and in that event, you should find the Defendant guilty of (capital murder/kidnaping).

(emphasis added). The problem with these instructions is that they allow for a guilty verdict if the defendant did "any act which is an element" of the crime.

¶17. Contrary to these instructions, there were three instructions preceding these two that specifically addressed the burden of the State. For example, S-4, S-6-A, and S-7 each provide that "[i]f the State has failed to prove any one or more of the above elements beyond a reasonable doubt, then you shall find the Defendant not guilty of [the crime]." Each jury instruction that specifically addressed the crimes charged also specifically stated that the State must prove every element of the crime beyond a reasonable doubt or the defendant is to be found not guilty.

¶18. In *Hornburger v. State,* 650 So.2d 510, 515 (Miss. 1995), this Court held that the jury was improperly instructed by a similar aiding and abetting instruction. However, when the instruction was read together with other instructions presented to the jury, the instructions adequately informed the jury of the law which made the improper instruction harmless error. *Id. See also Gray v. State*, 487 So.2d 1304, 1308 (Miss. 1986) (when instructions are read together, no error can be predicated on failure of one instruction to set out properly a necessary element of the crime, where the element was included correctly in other instructions).

¶19. Milano argues that recently similar instructions have been found to be reversible error. In *Berry v. State*, 728 So.2d 568, 571 (Miss. 1999), this Court examined a jury instruction regarding the crime of aiding and abetting the transfer of cocaine. The jury instructions in *Berry* contained language substantively identical to the above instructions, except that the named crime was transfer of cocaine. However, in *Berry*, this Court stated, "[i]n this case, however, we find that reading the instructions as a whole did not cure the error resulting from the improper instruction." *Id.* at 570.

¶20. In *Lester v. State,* 744 So.2d 757, 760 (Miss. 1999), this Court also reversed a case based on similar jury instructions. As in *Berry*, this Court found that, "there is nothing in the other instructions which cures this." *Id.* However, in this case, there were three preceding instructions that properly placed the burden on the State to prove every element of the crime. The jury was fully instructed that if all the elements were not proven beyond a reasonable doubt, Milano was to be found not guilty. Accordingly, the jury could not have been confused when all instructions were considered and read together. We thus find the error harmless.

¶21. The same problematic jury instruction used in *Hornburger, Berry,* and *Lester* is once again before this Court. To avoid any further confusion, today, we prospectively adopt the Fifth Circuit's Pattern Jury Instruction on Aiding and Abetting due to continuing litigation and confusion over this issue. The use of this instruction should cure future problems regarding this issue. The instruction is as follows:

> The guilt of a defendant in a criminal case may be established without proof that the defendant personally did every act constituting the offense alleged. The law recognizes that, ordinarily, anything a person can do for himself may also be accomplished by that person through the direction of another person as his or her agent, by acting in concert with, or under the direction of, another person or persons in a joint effort or enterprise.
>
> If another person is acting under the direction of the defendant or if the defendant joins another person and performs acts with the intent to commit a crime, then the law holds the defendant responsible for the acts and conduct of such other persons just as though the defendant had committed the acts or engaged in such conduct.
>
> Before any defendant may be held criminally responsible for the acts of others it is necessary that the

accused deliberately associate himself in some way with the crime and participate in it with the intent to bring about the crime.

Of course, mere presence at the scene of a crime and knowledge that a crime is being committed are not sufficient to establish that a defendant either directed or aided and abetted the crime unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator.

In other words, you may not find any defendant guilty unless you find beyond a reasonable doubt that every element of the offense as defined in these instructions was committed by some person or persons, and that the defendant voluntarily participated in its commission with the intent to violate the law.

Fifth Cir. Pattern Jury Instructions (Criminal) 2.06 (Aiding and Abetting) (Agency) (1998).

¶22. For the above reasons, we find that jury instructions S-13 and S-14 were erroneous. However, read with the other instructions which properly stated the law and required the jury to find that all elements of the offense had been proven before Milano could be found guilty, this error was harmless.

## II.

¶23. The second issue presented to this Court is whether the trial court erred in granting instruction S-4.

¶24. Jury instruction S-4 instructed the jury that they were to find Milano guilty of Capital Murder if they found that Milano killed Wolfe and "[t]hat the killing of Jeffrey Wolfe occurred while the defendant was in the process of committing a robbery of Jeffrey Wolfe and/or Charlene Leaser . . ."

¶25. The prosecution offered numerous scenarios of how Jeffrey Wolfe and Charlene Leaser may have been robbed of their belongings. For this reason, Milano argues that the jury may have agreed that he was guilty without agreeing on the actual offense of which he was guilty. In other words, Milano argues that the jurors may not have even agreed on which victims were actually robbed, resulting in a less than unanimous verdict. This argument fails.

¶26. In *Conner v. State*, 632 So.2d 1239, 1253 (Miss. 1994), the jury was instructed to return a verdict for capital murder if they found that the defendant committed murder during the course of a kidnaping or a robbery. Our Court found this to be harmless error because the crimes were "part of a single transaction and are essentially inseparable." *Id.* "Given the facts of this case, it is highly unlikely that any reasonable juror could have found Conner guilty of one crime but not the others." *Id.*

¶27. In this case sub judice, the robberies of Wolfe and Leaser were also part of a single transaction. The record shows that they were not stripped of their belongings until after Wolfe had been shot, after which all of the victims' personal belongings were collected from their hotel room and automobile and compiled at the crime scene. As in *Conner*, it is extremely unlikely that a reasonable juror could have found Milano guilty of robbing one victim but not the other. Milano and Simmons went to the hotel room where Leaser and Wolfe had been staying. They took **all** of their belongings from this room, and then Simmons drove Milano home. We find that jury could not have separated these crimes as they were part of a single transaction. Based on the particular facts of this case, any error in regard to jury instruction S-4 was harmless.

## III.

¶28. Milano's next argument alleges that the indictment failed to give him proper notice of the crime with which he was being charged. Milano urges this Court to extend the rule in *State v. Berryhill*, 703 So.2d 250 (Miss. 1997) to apply to capital murder charges undergirded by robbery. *Berryhill* requires that capital murder indictments based on burglary must "assert with specificity" the particular acts comprising the burglary. *Id.* at 258. Objections to indictments that fail to charge an essential element of the crime to be charged may not be waived, and may be raised for the first time on appeal. *Id.*

¶29. This Court has specifically declined to extend the holding in *Berryhill* to capital crimes undergirded by robbery. *Turner v. State*, 732 So.2d 937, 947 (Miss. 1999). In *Turner*, the jury was instructed to return a guilty verdict if they found the defendant committed murder "while engaged in the commission of the felony crime of armed robbery . . ." *Id.* At trial, the proof showed that two separate armed robberies took place at the scene of the killing. Because the indictment did not give him notice of which of the two robberies were to be the basis of the underlying felony giving rise to capital murder, the defendant claimed he did not have fair notice with which to prepare his defense. *Id.* We held in *Turner*:

> Simply put, the level of notice that would reasonably enable a defendant to defend himself against a capital murder charge that is predicated on burglary must, to be fair, include notice of the crime comprising the burglary. Burglary is unlike robbery and all other capital murder predicate felonies in that it requires as an essential element the intent to commit another crime.

*Id.* at 948.

¶30. As this Court has previously held, *Berryhill* is distinguishable from capital murder charges undergirded by the crime of robbery. For these reasons, this assignment of error fails.

## IV.

¶31. The fourth issue presented to this Court for review is whether the trial court erred in failing to grant Milano a judgment notwithstanding the verdict on both the capital murder charge and the kidnaping charge. Milano argues that the trial court erred in failing to grant his JNOV on both the capital murder charge and the kidnaping charge. In regard to JNOVs, this Court has held:

> [The] peremptory instruction, motion for JNOV, and motion for new trial assail the legal sufficiency of the evidence. This Court must review the trial court's finding regarding sufficiency of the evidence at the time the motion for JNOV was overruled. The evidence is viewed in the light most favorable to the State. All credible evidence supporting the conviction is taken as true; the State receives the benefit of all favorable inferences reasonably drawn from the evidence. Issues regarding weight and credibility of the evidence are for the jury to resolve. Only where the evidence, as to at least one of the elements of the crime charged, is such that a reasonable and fair minded jury could only find the accused not guilty, will this Court reverse.

*Hughes v. State*, 735 So.2d 238, 276 (Miss. 1999) (citing *Eakes v. State*, 665 So.2d 852, 871-71 (citing *Wetz v. State*, 503 So.2d 803, 807-08 (Miss. 1997) and *McClain v. State*, 625 So.2d 774, 778 (Miss. 1993)); *Glass v. State*, 278 So.2d 384, 386 (Miss. 1973).

¶32. Additionally, this Court has held that circumstantial evidence is sufficient to sustain a charge of

kidnaping. ***Underwood v. State***, 708 So.2d 18, 35 (Miss. 1998) (citing ***Williams v. State***, 544 So.2d 782, 789 (Miss. 1987)). Miss. Code Ann. § 97-3-53 makes it unlawful to "forcibly seize and confine any other person" or "inveigle or kidnap any other person with intent to cause such person to be secretly confined or imprisoned against his or her will . . ."Kidnaping is not a specific intent crime. Therefore, it is sufficient that the surrounding circumstances resulted in a way to effectively become a kidnaping as opposed to the actual intent to kidnap. ***Williams v. State***, 445 So.2d 798, 809 (Miss. 1984).

¶33. Our Court has also held that:

> [j]urors are permitted, indeed have the duty, to resolve the conflicts in the testimony they hear. They may believe or disbelieve, accept or reject the utterances of any witness. . . A reviewing court cannot and need not determine with exactitude which witness or what testimony the jury believed or disbelieved in arriving at its verdict.

***Ducksworth v. State,*** 767 So.2d 296, 299 (Miss. 2000) (citing ***Groseclose v. State***, 440 So.2d 297, 300 (Miss. 1983)). By Milano's own testimony, he did not offer to help Leaser. Also, Milano and Simmons were tried as aiders and abettors of each other. Jury instruction S-11 points out that "if two or more persons engaged in the commission of a crime, then the acts of each on the commission of such crime are binding upon all, and all are equally responsible for the acts of each in the commission of such crime."

¶34. Enough evidence existed in the record to prove that these two men kidnaped Leaser. Testimony revealed that she was tied up, stripped of her clothing, raped, and locked in a metal box. This Court will only reverse when the evidence is such that a reasonable juror could only find the accused not guilty. ***Hughes v. State***, 735 So.2d 238, 276 (Miss. 1999).

¶35. Next, Milano argues that he should have been granted a JNOV as to capital murder. His argument rests on the proposition that no reasonable juror could have found that the murder occurred during the course of a robbery. Again, "direct evidence is unnecessary to support a conviction so long as sufficient circumstantial evidence exists to establish guilt beyond a reasonable doubt." ***Conner v. State***, 632 So.2d at 1252. Leaser and Wolfe were both wearing clothes when they were arrived at Simmons's house. Wolfe was shot and dismembered at Simmons's house. His clothes were removed him. Similarly, Leaser was stripped of her clothes before being raped and locked in a metal box. Miss. Code Ann. § 97-3-73 requires that the taking be "in [the victim's] presence or from his person." In both instances, Leaser's and Wolfe's clothes were taken from their person.

¶36. This Court has also held that robbing a corpse in close proximity to the death of the victim is still robbery in Mississippi. ***Arthur v. State***, 735 So.2d 213, 219 (Miss. 1999); ***Mackbee v. State***, 575 So.2d 16, 36 (Miss. 1990) (held that there was sufficient evidence of continuous transaction, even though victim was killed three hours and sixty miles from the location where his wallet and vehicle were stolen). The jury heard testimony that, shortly after the murder, Simmons and Milano went to the hotel room where Leaser and Milano were staying and took all of their belongings.

¶37. Examining the evidence put on by the State, which is to be given the benefit of the doubt, it is apparent that there was sufficient evidence to uphold the kidnaping charge and capital murder charge, and the JNOV motion was properly denied.

**V.**

¶38. Next, Milano alleges that the trial court erred in permitting venirepersons to be drawn under an unconstitutional statute as Miss. Code Ann. § 13-5-1 (1972) placed improper restrictions as to who could serve on Milano's jury.

¶39. This issue is procedurally barred due to the fact that Milano did not raise this issue at the trial court. *Colburn v. State*, 431 So.2d 1111, 1114 (Miss. 1983) ("Appellant, by failing to attack the constitutionality of section 97-3-7(2) by proper motion waived any error in this regard and cannot now seek reversal on this ground in this Court."). Since this is a constitutional assignment of error, the merits of this issue will be addressed.

¶40. It is unclear from Milano's brief exactly what his complaint is in regards to Miss. Code Ann. § 13-5-1 other than unconstitutionality. This statute provides that the jury venire can be composed of (1) qualified electors, (2) persons 21 or older, and (3) persons who can read and write. Miss. Code Ann. § 13-5-1.

¶41. This Court has previously considered the exclusion of persons under age 21 from jury service and has consistently held that the exclusion does not violate the state or federal constitution. *Turner v. State*, 573 So.2d 657, 666 (Miss.1990), *rev'd on other grounds*; *Irving v. State*, 498 So.2d 305, 319 (Miss.1986) , *cert. denied*, 481 U.S. 1042, 107 S.Ct. 1986, 95 L.Ed.2d 826 (1987); *Fermo v. State*, 370 So.2d 930, 934 (Miss.1979); *Joyce v. State*, 327 So.2d 255, 261 (Miss.1976); *Johnson v. State*, 260 So.2d 436, 437 (Miss.1972).

¶42. Additionally, this Court has also upheld the requirement that jurors are required to be literate. In *Terrell v. State*, 262 So.2d 179 (Miss.1972), our Court addressed the predecessor statute to § 13-5-1, which also required that a prospective juror be able to read and write. This Court stated that with the variety of cases that now come before our Court and the numerous written documents that are introduced into evidence, the requirement that a juror be able to read and write is reasonable. The Court went on to reason that this was a non-discriminatory regulation which operates equally for all persons tried by a jury. *Id.* As another court has noted, no advantage is afforded to the State which is not also afforded to the defendant. This requirement is just as essential to the State's obligation to afford the accused a fair trial as it is to assure a fair trial for the State. *State v. Comeaux*, 211 So.2d 620, 622 (La. 1968).

¶43. Additionally, our Court has specifically found that "[t]he literacy requirments of § 13-5-1 are constitutional."*Wilson v. State*, 574 So.2d 1324, 1331 (Miss.1990).

¶44. In regard to jurors being qualified electors, this has also been addressed and upheld by this Court. *Wheeler v. State*, 219 Miss. 129, 142-43, 63 So.2d 517, 522 (1953). Specifically, we held that:

> Section 264 of the Constitution of 1890 provides that no person shall be a grand or petit juror unless a qualified elector, etc., and that Section 241 thereof sets forth the requirements for a qualified elector, one of which is payment of poll taxes except in certain cases. These sections of the Constitution have been implemented by Sections 1762 and 3235, respectively, of the Code of 1942. Many years ago, this Court and the Supreme Court of the United States held that Section 241, supra, does not contravene the Constitution of the United States. *Sproule v. Fredericks*, 69 Miss. 898, 11 So. 472; *Williams v. State of Mississippi*, 170 U.S. 213, 18 S.Ct. 583, 42 L.Ed. 1012. Also the Supreme Court of the United States has held that Section 264, supra, does not discriminate between the races, and is not violative of the Constitution of the United States. *Gibson v. State of Mississippi*, 162 U.S. 565, 16 S.Ct. 904, 40 L.Ed. 1075.

¶45. This assignment of error is procedurally barred and, alternatively, without merit.

## VI.

¶46. The sixth issue raised by Milano is whether prosecutorial misconduct demands reversal of Milano's conviction and sentence.

¶47. This issue is procedurally barred as it was not properly raised in the trial court. Our Court has held that a "trial judge cannot be put in error on a matter which was not presented to him for decision." *Howard v. State*, 507 So.2d 58, 63 (Miss. 1987). "The Supreme Court is a court of appeals, it has no original jurisdiction, it can only try questions that have been tried and passed upon by the court from which the appeal is taken." *Patterson v. State*, 594 So.2d 606, 609 (Miss. 1992) (citing *Leverett v. State*, 197 So.2d 889, 890 (Miss. 1967)). For this reason, this issue is not properly before this Court.

## VII.

¶48. Next, Milano alleges that a videotape made by Gary Simmons should have been admitted into evidence.

¶49. As with the admission of photographs, the admissibility of a videotape rests within the sound discretion of the trial judge. *McFee v. State*, 511 So.2d 130, 134 (Miss.1987) (citing *Watson v. State*, 483 So.2d 1326, 1328 (Miss.1986)); *Kelly v. State*, 463 So.2d 1070, 1074 (Miss.1985); *Stevens v. State*, 458 So.2d 726, 729 (Miss.1984). The same standard of admissibility applies to both photographs and to videotapes. *Holland v. State*, 587 So.2d 848, 864 (Miss.1991). Accordingly, this Court must determine if the probative value of the video outweighs any prejudicial effect it might cause. *Berry v. State*, 703 So.2d at 278.

¶50. Apparently, Simmons drove to Mobile, Alabama, and made a videotape shortly after the crimes were committed. He then sent this videotape to his ex-wife, Lori Simmons. The videotape is about 35-40 minutes long and is simply a recording of Simmons speaking to the camera. In this videotape, Simmons only admits to making mistakes that may result in his not being able to see his ex-wife and kids. Milano is never mentioned in this videotaped statement. Simmons also never states or alludes to the fact that he acted alone in his "mistakes."

¶51. Milano incorrectly states that in this videotape, Simmons assumed culpability for these crimes. Simmons made comments like, "I can't make it undone, I don't know how it happened, I would have given anything to take it back." He accepts responsibility for *his* actions. Simmons never directly admits that he killed anyone, but there is an insinuation in much of what he says. There was no way to cross-examine Simmons in regards to his statement. As earlier stated, the admission of a videotape rests within the sound discretion of the trial judge. *McFee*, 511 So.2d at 134. It cannot be determined that there was any probative value to this videotape much less that the probative value outweighed the prejudicial effect. The trial judge did not abuse his discretion in excluding this videotape from evidence.

## VIII.

¶52. The eighth issue presented to this Court is whether the trial court erred by denying defendant's motion in limine to preclude admission of gruesome photographs.

¶53. At trial, the prosecution proffered a blown up, color photograph of the severed head of Wolfe that had been recovered from the bayou. Also, a picture of the bayou was admitted into evidence which showed flesh from Wolfe's body floating in the bayou. Milano claims that the photographs are irrelevant and that their only purpose was to inflame and prejudice the jury.

¶54. State's Exhibit 7 depicted two pieces of flesh floating in the bayou near Simmons's house. This photograph was admitted into evidence during the testimony of Lee Merrill, an investigator with the Moss Point Police Department. Merrill was questioned about the outside perimeter area of Simmons's house. Merrill testified that this was the bayou as they came upon it and that there were two pieces of flesh floating there that were later recovered. He testified that this accurately and correctly portrayed what he viewed in the bayou. After this testimony, the photograph was admitted into evidence.

¶55. State's Exhibit 8 was a photograph of Wolfe's head. Dr. McGarry, the forensic pathologist, was questioned outside the presence of the jury concerning this photograph. He testified that he examined the head for identification purposes to determine whether he was dealing with one body or more than one. He further explained that three instrumentalities were used to make three different types of wounds to the head. He then showed the court exactly how he would use the photograph to explain the injuries to the jury. The photograph was ruled admissible.

¶56. Our Court has held that the admission of photographs "rests within the sound discretion of the trial judge, whose discretion will be upheld absent abuse of discretion." *McFee v. State*, 511 So.2d at 134. "The discretion of the trial judge runs toward almost unlimited admissibility regardless of the gruesomeness, repetitiveness, and the extenuation of probative value." *Walters v. State*, 720 So.2d 856, 861 (Miss. 1998). As long as the photographs, although gruesome, serve some evidentiary purpose, they can be admitted into evidence and this is not an abuse of discretion. *Id.* Additionally, as long as the photographs "supplement or add clarity to the testimony" no abuse of discretion is found. *Ashley v. State*, 423 So.2d 1311, 1316 (Miss. 1982) (citing *Hughes v. State*, 401 So.2d 1100, 1106 (Miss. 1981).

¶57. State's Exhibit 8 was used to explain the instrumentalities that were used in inflicting wounds to Wolfe's head. We find that there was no abuse of discretion since this photograph did "supplement and add clarity to the testimony" of the forensic pathologist.

## IX.

¶58. Milano argues that jury instruction S-18 and S-19 were erroneous because they included the issue of duress which he did not raise during the trial. Instruction S-18 read as follows:

> Evidence has been presented that the Defendant acted under duress in committing the crime of kidnaping**.**

> "Duress" is the exercise of unlawful force upon a person whereby that person is compelled to do some act that he or she otherwise would not have done. In order for duress to be a defense to a criminal charge, the impelling danger must be present, imminent, and impending, and of such a nature as to induce in that person a well-grounded apprehension of death or serious bodily harm if the act is not done. A person having a reasonable opportunity to avoid committing the crime without undue exposure to death or serious bodily harm cannot invoke duress as a defense.

> If the State failed to prove from the evidence in this case beyond a reasonable doubt that the

Defendant acted voluntarily in committing the crime of Kidnaping and not under duress, then you shall find the Defendant not guilty of Kidnaping.

¶59. Similarly, jury instruction S-19 stated that "[d]uress cannot be a defense to the crime of Capital Murder or Murder and you cannot be influenced by testimony of duress, *if any*, in your deliberations of Count I." To address this instruction first, the instruction does not even allude to the fact that duress was a pled as a defense. It states, for clarification, that duress is not a defense and that you cannot be influenced by testimony of duress, **if any**.

¶60. Next, as to the instruction on kidnaping, Milano again argues that he did not allege duress in regards to the kidnaping charge and therefore it should not have been included in the instruction. Milano had offered testimony during the trial that Simmons "forced him by threat and physical menace to clean up the crime scene." The State had offered evidence that Milano was actually the one who shot Wolfe. "[T]he jury may accept the testimony of some witnesses and reject that of others, and may accept in part and reject in part the testimony of any witnesses, or may believe part of the evidence on behalf of the state and part of that for the accused . . . ." *Taylor v. State*, 733 So.2d 251, 257 (Miss. 1999).

¶61. Milano did present to the jury that he had acted under duress at least during part of this crime. For this reason, we hold that the jury was properly instructed because credible evidence in the record existed that would support such instruction. *Gibson v. State*, 731 So.2d 1087, 1093 (Miss. 1998).

## X.

¶62. Milano argues that errors common to him and Simmons should be incorporated into his arguments along with all authority cited in Simmons's brief.

¶63. Our Court has held repeatedly that "it is the duty of the appellant to provide authority and support of an assignment." *Drennan v. State*, 695 So.2d 581, 585-86 (Miss. 1997) (citing *Hoops v. State*, 681 So.2d 521, 526 (Miss. 1996); *Kelly v. State*, 553 So.2d 517, 521 (Miss. 1989); *Brown v. State*, 534 So.2d 1019, 1023 (Miss. 1988); *Harris v. State*, 386 So.2d 393 (Miss. 1980). "If a party does not provide support this Court is under no duty to consider assignments of error when no authority is cited." *Hoops*, 681 So.2d at 526.

¶64. Milano has cited no authority to support this assignment of error. Milano also includes in this argument that the videotape should be made a part of the Milano record because Issues IV and V cannot properly be addressed without it. The videotape is a part of the Simmons record which is currently on appeal to this Court and is easily accessible for review. For these reasons, this issue is without merit.

## XI.

¶65. Lastly, Milano argues that these cumulative errors require reversal. Finding that there are no reversible errors by the trial court, this issue need not be addressed.

## CONCLUSION

¶66. Jury instruction S-13 was erroneous. However, jury instructions S-4, S-6-A, and S-7 properly placed the burden on the State to prove every element of the crime. These instructions also provided that, if the State failed to prove any one element beyond a reasonable doubt, then Milano should be found not guilty.

For this reason, the granting of jury instruction S-13 was harmless error and does not require reversal. We adopt the Fifth Circuit's Pattern Jury Instruction on Aiding and Abetting to avoid continuing litigation and confusion. Finding that no reversible error exists, the judgment of the Jackson County Circuit Court is affirmed.

**¶67. COUNT I: CONVICTION OF KIDNAPPING AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**COUNT II: CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. THE SENTENCE IN COUNT I IS TO RUN CONSECUTIVELY WITH THE SENTENCE IN COUNT II.**

> **MILLS, WALLER, COBB, DIAZ AND EASLEY, JJ., CONCUR. BANKS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, P.J. PITTMAN, C.J., JOINS IN PART. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BANKS, P.J. PITTMAN, C.J., JOINS IN PART.**

> **BANKS, PRESIDING JUSTICE, DISSENTING:**

¶68. Once again this Court sanctions a clearly erroneous instruction on the basis of some phantom cure it finds in instructions which are in conflict with the erroneous one. The problem with conflicting instructions, one erroneous and the other not, is that the jury may choose either to arrive at a verdict and there is no way to know which it chose. *See* ***McCary v. Caperton***, 601 So. 2d 866, 869 (Miss. 1992); ***Pittman v. State***, 297 So. 2d 888, 893 (Miss. 1974). "When a jury is given instructions which are in hopeless conflict this Court is compelled to reverse because it cannot be said that the jury verdict is founded on correct principles of law." ***Scott v. State***, 446 So. 2d 580, 583 (Miss. 1984).

¶69. The instruction here in question which allows a jury to convict upon a finding that the defendant did any single element of the crime is clearly wrong. It was given to the jury and stood on an equal footing with other instructions requiring the jury to find all of the elements. This fact does not distinguish this case from those which have found that error to be reversible. The problem is not that the jury was uninstructed as to the elements of the crime in this instruction as was the complaint in ***Gray v. State***, 487 So. 2d 1304, 1308 (Miss. 1986), cited by the majority. Instead, the problem here is that the jury is told in an instruction that it need find that the defendant did only one element in order to find guilt. It is important that Milano objected to the instruction here. In ***Gray***, the improperly formulated conspiracy instruction was recognized as erroneous but the court noted that there had been no objection. The Court's inquiry was whether to reverse on plain error. ***Id***. It was in that context that the Court found the defense instructions sufficient to avoid reversal.

¶70. In each case, except one, in which we have dealt with this erroneous aiding or abetting instruction, the jury has also been instructed elsewhere that it had to find every element of the crime in order to find the defendant guilty. The problem is today and has always been that the faulty aiding and abetting instruction presents a conflict with these other instructions. That is what we recognized in ***Berry v. State,*** 728 So. 2d 568, 570-71 (Miss. 1999) and reiterated in ***Lester v. State***, 744 So. 2d 757, 758-60 (Miss. 1999).[(2)]

¶71. This case cannot be distinguished from ***Berry***. Neither can ***Berry*** be distinguished from ***Hornburger***

*v. State*, 650 So. 2d 510, 515 (Miss. 1995). In both ***Berry*** and ***Hornburger*** there was an instruction given on the presumption of innocence requiring the State to prove "the defendants guilt of every material element of the crime with which he is charged." (Instruction C-5 in both cases). In both cases there was an instruction given setting forth facts to be found constituting each element of the crime and closing with the sentence: "If the state has failed to prove any one or more of these elements beyond a reasonable doubt, then you shall find the defendant not guilty." (Instruction D-2 in Berry and S-I-A in Hornburger). This same language is use in the instructions in the instant case.

¶72. The only real difference, then, between ***Berry*** and ***Hornburger*** is that in ***Berry*** this Court correctly recognized the problem with inconsistent instructions, finding them "confusing and misleading" and in ***Hornburger*** it did not. 728 So. 2d at 571. ***Berry*** effectively overruled ***Hornburger***. Today's decision, schizophrenically, reverts to the illogic of that ***Hornburger***.

¶73. Finally, it is instructive that the error of this instruction was identified in ***Hornburger*** in 1995. Yet in 1998, when this case was tried, we see the same error repeated. Once again it seems that "harmless error" is deemed no error at all, at least in the prosecution of criminal cases. *See **Payton v. State***, No. 96-CT-00949-SCT, 1999 WL 649652, 54 (Miss. Aug. 26, 1999).

¶74. Because the jury instructions here are in irreconcilable conflict on what the jury must find to render a verdict that the defendant is guilty of the crime charged, I would reverse and remand for a new trial. For these reasons, I respectfully dissent.[(3)]

**McRAE, P.J., JOINS THIS OPINION. PITTMAN, C.J., JOINS IN PART.**

**McRAE, PRESIDING JUSTICE, DISSENTING:**

¶75. The majority allows a clearly erroneous instruction that relieves the State of its burden of proving every element of the crime, which has been the jurisprudence of our courts for more than one hundred years. It allows one single instruction to trump all other jury instructions, by allowing a jury to convict a defendant if it finds that he committed any one element, but not all elements of the crime. I would, therefore, reverse and remand this case for a new trial. Accordingly, I dissent.

¶76. The majority either misunderstands or disregards our leading case law on this issue. Prevailing Mississippi case law prohibits trial courts from instructing juries that they may return a verdict of guilty if they find that the defendant committed "any act which is an element" of the crime. Such instructions constitute reversible error, regardless of contemporaneous instructions requiring the State to prove every element of the crime. In ***Lester v. State,*** 744 So.2d 757 (Miss. 1999), we held that the "any act which is an element of a crime" language cannot be cured, <u>even if the State's burden is included in the same instruction</u>.

¶77. To bolster its position, the majority cites ***Conner v. State***, 632 So.2d 1239 (Miss. 1994), which is totally different factually and distinguishable from the case before us. In ***Conner***, we found harmless error where an instruction said that the underlying crime of a capital murder charge was either robbery or kidnaping. In that case, it was both. The defendant robbed the victim by shoving her into her car and kidnapping her. To convict Conner of capital murder, the State only needed to prove that one of the crimes of either kidnapping or robbery was committed. The crimes of kidnapping and robbery were a single transaction under those facts, regardless of the disjunctive language in the instruction. This is not analogous

to the case at bar, where an instruction required the State to prove only one element of a crime. We are not in the jury room, and we do not allow testimony as to what happened in the jury room. There is no way the majority can look through a crystal ball and say that the jury could not have been confused when all instructions were considered and read together.

¶78. The majority states that it can find no reversible error because "[e]ach jury instruction that specifically addressed the crimes charged also specifically stated that the State must prove every element of the crime beyond a reasonable doubt or the defendant is to be found not guilty." Even if accurate, this ruling is contrary to *Lester* and other prevailing case law.

¶79. However, this statement is not supported by the record. Jury instruction S-13 instructs the jury on the law of aiding and abetting in the commission of a capital murder, the relevant text of which is set out below:

> If you believe from the evidence beyond a reasonable doubt that the Defendant, Timothy John Milano, did willfully, unlawfully and feloniously **do any act which is an element** of capital murder with which he is charged, or, immediately connected with it, or, leading to its commission, then and in that event, you should find the Defendant guilty of capital murder.

(emphasis added).

¶80. Instructions S-13 specifically addressed the jury on the crime of aiding and abetting in a capital murder. It further ordered the jury to find Milano guilty of capital murder if it found beyond a reasonable doubt that he committed <u>any</u> element of that crime. Instruction S-13 <u>does not</u> further state that the prosecution must prove every element of the crime in order to find Milano guilty.

¶81. Likewise, jury instruction S-14 instructs the jury on the law of aiding and abetting in the commission of a kidnapping. The relevant text of it is as follows:

> If you believe from the evidence beyond a reasonable doubt that the Defendant, Timothy John Milano, did willfully, unlawfully and feloniously **do any act which is an element** of kidnapping with which he is charged, or, immediately connected with it, or, leading to its commission, then and in that event, you should find the Defendant guilty of kidnapping.

(emphasis added).

¶82. Instructions S-14 specifically addressed the jury on the crime of aiding and abetting in a kidnaping. It further ordered the jury to find Milano guilty of kidnapping if it found beyond a reasonable doubt that he committed <u>any</u> element of that crime. Instruction S-14 <u>does not</u> further state that the prosecution must prove every element of the crime in order to find Milano guilty.

¶83. Other instructions, given contemporaneously with S-13 and S-14, did instruct the jury that the State is required to prove every element of the crime beyond a reasonable doubt before the jury may find Milano guilty of either count. Jury instructions S-4, S-6-A, and S-7 each state the "[i]f the State has failed to prove any one of more of the above elements beyond a reasonable doubt, then you shall find the Defendant not guilty." This language was not included in instructions S-13 and S-14, as suggested by the majority.

¶84. We have recently held similar instructions to be reversible error. In *Berry v. State*, 728 So.2d 568 (Miss. 1999), we examined a jury instruction regarding the crime of aiding and abetting the transfer of

cocaine. The jury instructions in *Berry* contained language substantively identical to the above instructions, except that the named crime was transfer of cocaine. In particular, the *Berry* instruction employed the same "any act which is an element" language, coupled with a separate instruction that required that State to prove all elements of the crime.

¶85. In *Berry*, we found that a separate instruction, even if given contemporaneously, could do nothing to cure the defective aiding and abetting instruction. We stated:

> The problem with the offending instruction is that it appears to give the jury an additional option of finding the defendant guilty if she committed only one element of the crime without even finding that the crime was ever completed. Even if the jury read all of the instructions together, they could still be misled into believing that instruction S-3 was merely another option in addition to the choice of finding that Berry committed all of the elements of the crime herself.

*Id*. at 571. For this reason, we held that the accessory instruction was confusing, misleading and required reversal, regardless of a contemporaneous instruction that required the State to prove all elements of the offense beyond a reasonable doubt.

¶86. Likewise, in *Lester v. State,* 744 So.2d 757 (Miss. 1999), we again found that such instructions constitute reversible error. "As in *Berry*, it gives the jury an option to convict Lester based solely upon his doing any act which is an element of the crime without relating that act to liability of the commission of the crime itself by requiring the jury find him to have been present and consenting to and encouraging that crime."*Id*. at 760.

¶87. In *Lester*, we reversed a conviction based on a jury instruction that contained the "any element of the crime language," <u>even though the same instruction also stated the State's burden of proving every element</u>. The instruction which was given is as follows:

> The Court instructs the Jury that each person present at the time, and consenting to and encouraging the commission of a crime, knowingly, wilfully, and feloniously doing any act which is an element of the crime, or immediately connected with it, or leading to its commission, is as much a principal as if he or she had with his own hand committed the whole offense.
>
> Therefore, if you believe from the evidence, beyond a reasonable doubt, that the Defendant, Stanley Lester, did wilfully, knowingly, unlawfully and feloniously do <u>any act which is an element of the crime</u> of capital rape or immediately connected with it, or leading to its commission, then and in that event, you should find the Defendant, Stanley Lester, guilty as charged in Count 1.
>
> <u>If the State has failed to prove any one or more of these elements beyond a reasonable doubt then you shall find the Defendant, Stanley Lester, not guilty in Count 1.</u>

*Lester,* 744 So. at 760 (emphasis added).

¶88. Even though the State's burden to prove each element of the crime was inserted into the aiding and abetting instruction itself in that case, we held that such language could not cure the improper "any element of the crime" language. We explained our reasoning as follows: "The addition of the third paragraph by the State to the instruction in this particular case does not cure its deficiency. Even with the additional language, the fact remains that the instruction was confusing and misleading for the same reasons set forth in *Berry*."

*Id.*

¶89. Ign oring our most recent case law, the majority now seeks to turn the clock back to *Gray v. State*, 487 So.2d 1304, 1308 (Miss. 1986) for the proposition that "when instructions are read together, no error can be predicated on failure of one instruction to set out properly a necessary element of the crime, where the element was included correctly in other instructions." Even if error, however, the majority would hold these instructions to be harmless error based on the overruled case of *Hornburger v. State*, 650 So.2d 510, 515 (Miss. 1995) (holding such aiding and abetting instructions to be harmless error when given with other instructions which properly stated the State's burden to prove all elements).

¶90. The author of the majority opinion recognized the need for a uniform rule in his dissent in *Simmons v. State*, 746 So.2d 302, 309 (Miss. 1999): "[G]uidance on this issue is a necessity because the issue is bound to reoccur and prosecutors and circuit judges need guidance on what this court will recognize as a proper aiding and abetting instruction." He now writes that "we find there were no errors at the trial court," while simultaneously adopting the pattern jury instruction from the Fifth Circuit. If these instructions are not erroneous, then why does the majority adopt a uniform jury instruction for the future? Shouldn't it apply to this case?

¶91. Under our most recent case law, instructing a jury that a defendant may be found guilty by committing any element of the crime constitutes reversible error, regardless of contemporaneous instructions that require the State to prove every element. Under our 1999 ruling in *Lester v. State*, the "any act which is an element of a crime" language cannot be cured, even if the State's burden is included in the same instruction, and especially not by other instructions.

¶92. The majority attempts to overcome the case at bar and look beyond it to say that the courts should start using a similar instruction to that which the Fifth Circuit uses for aiding and abetting. It says that the instructions are again harmless error and are simply a problem. What is the problem? The majority fails to recognize the problem, which is that instructions like S-13 and S-14 can trump all other instructions, otherwise there is no problem. These instructions are wrong. We have said they are wrong before, but now once again make light of our Constitution by branding them harmless error with no basis in fact to back it up, allowing a jury to convict by finding that only one element of a crime was committed.

¶93. Being in doubt as to which instruction the jury based its verdict on, I would reverse this case and remand for another trial so that the parties can say that both the State and the defendant received a fair trial. With what the majority writes today, this cannot be said. Therefore, this case should be reversed and remanded for a new trial. Accordingly, I dissent.

### BANKS, P.J., JOINS THIS OPINION. PITTMAN, C.J., JOINS IN PART.

1. Timothy Milano is the appellant in this case and will be referred to as "Milano." Timothy Milano's brother, Sonny Milano, will be referred to as "Sonny."

2. *Lester* is the case in which no other instruction was given, with regard to Lester, setting forth each element. Such instructions were given with respect to the co-defendants whom Lester was convicted of aiding and abetting. In reversing Lester's conviction we relied upon what we concluded in *Berry*. 744 So. 2d at 759-760. *Lester*, however, was factually different and more egregious than *Berry* in that Lester was tried along with others and charged only as an accessory before the fact. Because of that, the faulty

instruction was the only substantive instruction with respect to Lester. We reached the issue as plain error even though it was not assigned as grounds for the grant of certiorari. *Id*. at 758.

3. I have no opposition to the suggestion by the majority that the instruction approved by the United States Court of Appeals for the Fifth Circuit be used. That suggestion, however, does nothing at all to cure the error which infected the trial here at hand. Moreover, it is difficult to see how "adopting" this instruction as the majority does, will forestall further conflict in this area where we have previously declared the instruction here to be erroneous and reversible error only to backtrack from that pronouncement today in the face of the same error made well after the declaration of error by this Court. History has shown that, as long as this Court is willing to countenance a failure to adhere to its pronouncements concerning the propriety of instructions, the erroneous instructions will continue to be used.