650 So.2d 510 (1995)
Gregory HORNBURGER, a/k/a Greg Hornberger
v.
STATE of Mississippi.
No. 92-KA-0178.
Supreme Court of Mississippi.
February 9, 1995.
Tom T. Ross, Jr., Ross Hunt Spell & Ross, Clarksdale, for appellant.
Michael C. Moore, Atty. Gen., Wayne Snuggs, Asst. Atty. Gen., Jackson, for appellee.
Before PRATHER, P.J., and SULLIVAN and JAMES L. ROBERTS, Jr., JJ.
JAMES L. ROBERTS, Jr., Justice, for the Court:

INTRODUCTION
Gregory Hornburger ("Hornburger") was convicted in the Coahoma County Circuit Court of burglary, and sentenced to seven years imprisonment. He appeals, citing the following error:
WHETHER THE TRIAL COURT ERRED IN GRANTING STATE'S INSTRUCTION S-8
Hornburger argues that the jury was not adequately instructed on the law. He submits that Instruction S-8 permitted the jury to find him guilty if they found he had committed any act which was an element of the crime, without first finding that he was present, consenting and encouraging the commission of the crime. He also argues that the instruction S-8 conflicts with another instruction, S-1-A. Hornburger seeks a new trial.
Instruction S-8 is virtually identical to an instruction upheld by this Court in Simmons *511 v. State, 568 So.2d 1192, 1203-04 (Miss. 1990) and Davis v. State, 586 So.2d 817, 821 (Miss. 1991). Other instructions to the jury informed them that the State was required to prove each element of the crime of burglary. However, the jury in this case was improperly instructed. Nevertheless, we find it to be a harmless error given the overwhelming weight of the evidence. Hornburger's conviction is therefore affirmed.

II.

FACTS AND PROCEDURAL HISTORY
Hornburger, along with Louis Lucas Jr., was indicted on December 18, 1991, in the Coahoma County Circuit Court for burglary of the Lucas Auto Repair Shop. The Auto Shop, located on Dog Bog Road in Clarksdale, Mississippi, was owned by Lucas' father, Louis Lucas, Sr. On January 9, 1992, Hornburger filed a motion for severance of his trial.
Trial was held before Judge John L. Hatcher on February 6, 1992. Testimony is summarized below.

Eugene Polite
Polite, a friend of Louis Lucas Sr., testified that Lucas Sr. had asked him to keep an eye on the auto repair shop he owned in Clarksdale, while he (Lucas) was on a visit to Texas in July of 1991. The shop building had two doors, one on each end; the doors were secured by locks and chains, and Polite had keys to both locks. Polite testified that he checked on the shop regularly, including around noon on Sunday, July 28, when everything appeared to be in order. That night, around 10:00 or 10:30 p.m., Polite received a call from a friend, Charles Thomas, who told him that it appeared that a door to the shop building had been pried open. Polite went to the auto shop, where he observed that the metal front door to the shop had been "pulled aloose and pried open, pried up from the bottom."[1] The next day, Polite reported to Coahoma County Deputy Williams that property was missing from the shop, including a big tool box, a couple of small tool boxes, a torque wrench, a portable air tank or compressor, and an electric grinder.[2]

Jesse Tolliver
Tolliver, who owned a salvage yard in Shufordville, testified that around 4:30 or 5:00 p.m. on July 28, 1991, Louis Lucas, Jr. had come to his yard with Hornburger, and offered to sell him a small red tool box for $40. Tolliver said that he would not pay $40 for it. Lucas stated that he needed the money to get to Texas. At the time, Lucas Jr. was sitting in the car with Hornburger, who was driving. Tolliver testified that Hornburger seemed in a hurry, or "ready to go." When Tolliver offered to pay $20, Hornburger said "No, man, let's go," but Lucas said he would take $20. Tolliver then paid Lucas Jr. $20.

John Harris
Harris, the owner of an auto repair shop in Clarksdale, stated that on Sunday afternoon, July 28, 1991, Lucas Jr. and Hornburger came to his shop in Hornburger's car. Hornburger offered to sell Harris a big red tool box; Lucas stated that the box was "a school supply box." Lucas asked for $40, then $35. Harris then gave them $30. Harris testified that Lucas Jr. and Hornburger had participated "equally" in the sale. The box was locked, and Lucas and Hornburger had not provided the key. Harris stated that he had purchased the box without viewing the contents because he knew a large box of Snap-on tools to be worth around $300. On Monday afternoon, Deputy Williams came to the shop and asked him about the box. Harris gave Williams the box. Harris stated that Hornburger had approached him shortly after that, and offered to give him his money back. Harris stated that did not take any money from Hornburger because he did not have the box to give back.

Louis Lucas Jr.
Lucas Jr. testified that around 2:30 or 3:00 on July 28, 1991, he had encountered Hornburger *512 driving on Main Street, and had said to Hornburger, "let's make a move" or "let's go somewhere, let's go out of town for a minute." After the two drove from town, Lucas stated to Hornburger, "I want you to take me to a certain place, I'm going to get a tool box." Lucas testified that he and Hornburger discussed selling the tool box for money to buy drugs. Hornburger stated that he needed some gas. When they arrived at Lucas' father's shop, they siphoned about four gallons of gas from a car there. Lucas explained that they forced the door to the shop building open:
Me and Greg both. We got it bent, we bent it, you know. All right, at first, you know, just like the two of us, when we got there the door was closed tight. O.K. So I helped to kind of get a hold on it and he pressed  he had one of his legs pressed on the door and forced it out. Because he's stronger than I am. So that way it left enough room for me to get through there. I'm smaller than he is.
Hornburger then stood outside the shop as a lookout, while Lucas went into the shop and took the small red tool box. He and Hornburger then sold the box to Tolliver for $20, got some gas, and bought drugs with the rest of the money. They then drove around drinking beer, and, agreeing that they needed more money, returned to the Lucas auto shop. With Hornburger again acting as lookout, Lucas entered the shop, and slid a large tool box to the front door. The two then toted the box to Hornburger's car. Lucas testified that they then drove to Harris' house, and Hornburger stated "just let me talk to John ... I know him real well." Hornburger then made the deal with Harris, and Lucas helped him get the box out of the car. Lucas and Hornburger then bought gas and cigarettes, then found a drug dealer and purchased more drugs.[3] Lucas testified that he and Hornburger then made a third trip to the shop, at which point Hornburger stated, "We're going to get everything that we need this last trip. Ain't no sense in us steady running back and forth, getting piece by piece." Hornburger then brought a compressor out of the shop. Hornburger then brought a grinder, jig-saw, torque wrench, and a black tool box to the door of the shop, and the two put it all in the car. Lucas stated that at the time, the two thought that if they got caught, no charges would be pressed against them because it was his father's shop.[4] Lucas and Hornburger then drove to Hornburger's grandmother's house in Jonestown, and unloaded the stuff behind her house. Lucas stated that Hornburger planned to return and take the stuff "out of town." Lucas also stated that he and Hornburger agreed to wait until the next day to "get rid of the stuff." The next day, the two met after Hornburger got off work, but did not sell the stuff. Lucas was arrested in Jonestown; he told Deputy Williams that Harris and Tolliver each had a toolbox, and that Hornburger had the rest of the stuff.
On cross-examination, Lucas stated that he plead guilty to the charges against him and agreed to testify, in exchange for the prosecution's recommendation of a four-year sentence, rather than the maximum seven years.

Deputy Floyd Williams
Coahoma County Deputy Sheriff Williams testified that about 9:30 a.m. on July 29, 1991, Eugene Polite had come to the sheriff's office to report that Lucas' shop had been burglarized. Williams testified that he went to the shop and took photos; Polite told him that he needed to talk to Lucas Jr., who "might have had something to do with the break-in." Williams talked to Lucas, then got a warrant for Hornburger. He also recovered the tool boxes from Harris and Tolliver.

Gregory Hornburger
The defendant testified that he had been living in Jonestown for five years, prior to which he had lived in Chicago. He stated that he had worked on a farm for about two years, and had also worked at a mill and a chemical plant. Hornburger testified that he *513 had served time for a 1983 conviction for armed robbery.
Hornburger testified that on July 27, 1991, he had been driving on Main Street in Jonestown. He encountered Lucas, who stopped him and asked if he would take him to his father's shop and pull his car to Tolliver's salvage yard. When the two arrived at the Lucas shop, they discovered that they could not pull the car, because it had two flat tires. Lucas then stated that "he would get two tool boxes and sell them; that belonged to him." Hornburger stated that Lucas then went in the back door of the building, and brought out two tool boxes, large and small. Hornburger then stated that he had seen Lucas go in a single door on the side of the shop. Hornburger testified that Lucas got the tools out, and that both of them put them in the car. Lucas told him that these were his tools, which he got from mechanics school. The two then went to Tolliver and sold one tool box. Lucas then asked Hornburger if he knew anybody who would by the other box, and Hornburger suggested John Harris. They went to Harris and sold him the box; Hornburger testified that he had "negotiated" with Harris because Harris asked him what he thought about the box.[5] Lucas then asked Hornburger if he would get the compressor and other items, and Hornburger told Lucas he would have to pay him (Hornburger) to go back. Lucas had already paid him ten dollars to get the tool boxes. Lucas in fact paid Hornburger ten more dollars to go back and get the compressor. Hornburger stated that they retrieved the compressor from under a shed at the auto shop. Hornburger testified that Lucas told him his father had moved to Texas and "left him in charge of the items." Hornburger denied buying or using drugs. Lucas asked Hornburger if he knew anyone who would want the compressor, and Hornburger did not; Hornburger said that he would like to have it, but he didn't have any money. Lucas told Hornburger to hold the compressor for him, and the two put it in Hornburger's grandmother's backyard. Hornburger stated that he covered the stuff with plastic, and left it behind a tree. Hornburger testified that Lucas said he was going to sell the stuff.
Hornburger stated that he believed all the possessions to belong to Lucas, because Lucas had "swore on the Bible and hoped that God would strike him down that he wasn't lying, that it was his." Hornburger said he was convinced because he "never knew (Lucas) to take nothing, and would never have thought that he would take it from his father anyway."
Hornburger testified that about three days later, Mr. Gilliam came to see him, stating that Lucas had taken some items from his father's shop. Hornburger denied any knowledge at that time, because he wanted "to try to find out what happened." Hornburger then moved the items from the backyard to "back towards Rich, down in the weeds," because he "didn't want to be involved in something (Lucas) had done that wasn't right." Hornburger went to Gilliam and told him he would take him to the stuff. Hornburger then put the stuff in his car and brought it to Gilliam's house.[6]
Hornburger testified that he did not have anything to do with pulling back the door to the shop. He stated that when he saw the door, it was not bent. Hornburger stated that it had not taken Lucas long to get in the shop, that "it seemed like a normal person walked in with keys and walked out." Hornburger further testified that he never knew or suspected that the equipment taken from the shop was stolen, or that Lucas should not have had possession of it.
Hornburger's lawyer voiced an objection to instruction S-8, which stated:
The Court instructs the Jury that each person present at the time, and consenting to and encouraging the commission of a crime, and knowingly, willfully and feloniously doing any act which is an element of the crime or immediately connected with it, or leading to its commission, is as much a principal as if he had with his own hand *514 committed the whole offense; and if you find from the evidence beyond a reasonable doubt that the defendant, Gregory Hornburger, a/k/a Greg Hornburger, did willfully, knowingly, unlawfully and feloniously do any act which is an element of the crime of burglary of a building, or leading to its commission, then and in that event, you should find the defendant guilty as charged.
Hornburger's lawyer explained his objection:
The first part of it before the semi-colon instructs what  it says "any person consenting to and encouraging the commission of a crime is guilty as principal." Then it says, "if you find beyond a reasonable doubt that the defendant unlawfully and willfully did any act which is an element of the crime of burglary or leading to its commission, then you should find the defendant guilty as charged."
I think we should have in there something to the effect, "if you find that he was present at the time or consented to, encouraged, and committed some act which is an element, then you can find him guilty." The way it's broken up, it sounds like this is what an accomplice is, but then under that it ways if you find him just guilty of one or find one element proven, then you can find him guilty of burglary without finding that he is "an accomplice." Or an aider and abettor, I guess.
Hornburger's lawyer further stated that under the instruction, "the jury is not required to find beyond a reasonable doubt that he aided and abetted." He stated:
My problem is after the semi-colon, where the Court is instructing the jury, it basically says if you find he did any act which is an element of the crime of burglary, you shall find him guilty as charged. It doesn't say anything about you have to find he aided or abetted somebody.
The court declined to strike or alter instruction S-8.[7]
The jury returned a guilty verdict, and judgment was entered February 17, 1992. Hornburger was sentenced to seven years imprisonment, and ordered to make restitution. Hornburger filed a motion for a new trial on February 18, 1992, which was denied on February 18, 1992. Hornburger filed his appeal to this Court on February 19, 1992.

III.

DISCUSSION OF ISSUE

WHETHER THE TRIAL COURT ERRED IN GRANTING STATE'S INSTRUCTION S-8
Hornburger argues that instruction S-8 conflicts with instruction S-1-A. Both instructions follow:
S-8
The Court instructs the Jury that each person present at the time, and consenting to and encouraging the commission of a crime, and knowingly, willfully and feloniously doing any act which is an element of the crime or immediately connected with it, or leading to its commission, is as much a principal as if he had with his own hand committed the whole offense; and if you find from the evidence beyond a reasonable doubt that the defendant, Gregory Hornburger, a/k/a Greg Hornburger, did willfully, knowingly, unlawfully and feloniously do any act which is an element of the crime of burglary of a building, or leading to its commission, then and in that event, you should find the defendant guilty as charged.
S-1-A
The defendant, Gregory Hornburger, has been charged by an indictment with the crime of burglary while acting in concert with or aiding and abetting another.
If you find from the evidence in this case beyond a reasonable doubt that:
1. The building located at 1720 Dog Bog Road in Coahoma County, Mississippi, was the property of Louis Lucas, Sr. and
2. The defendant, Gregory Hornburger, by acting in concert with or aiding and abetting Louis Lucas, Jr. broke and entered *515 the Lucas Auto Repair Shop Building by bending back the front door; and
3. Goods, merchandise or valuable things were kept in building for sale, use or deposit, and
4. the defendant had the intent to steal from the building, then you shall find the defendant guilty of burglary of a building other than a dwelling.
If the State had failed to prove any one or more of these elements beyond a reasonable doubt, then you shall find the defendant not guilty.
Hornburger contends that these instructions did not adequately apprise the jury of the law. Hornburger suggests that S-8 tells the jury that if they found he had committed any act which was an element of burglary or led to its commission, they could find him guilty as charged, without first finding that he was present, consenting and encouraged the commission of the crime (i.e., an aider and abettor). Hornburger argues that this conflicts with S-I, and that the jury "is given a choice to find the Appellant guilty either by Instruction S-1-A or S-8."
The State argues that this Court has approved instructions virtually identical to S-8, and has rejected claims that such an instruction permits the jury to convict without finding the defendant an aider and abettor.[8] The State, noting this Court's holdings that all instructions must be read together, also argues that S-1-A and S-8, when read together, required that the State prove each element of the crime, including aiding and abetting, beyond a reasonable doubt. The State contends that the two instructions did not conflict, and that the jury was properly instructed.
This Court rejected the arguments offered by Hornburger in Simmons v. State, 568 So.2d 1192 (Miss. 1990). In Simmons, the appellant argued that the court had erred in granting an instruction almost identical to S-8, because the instruction implied that the jury could convict her if only one element of the crime charged was proven. Simmons argued that this was reversible error, since all elements of a crime must be proven beyond a reasonable doubt. This Court noted that the instruction complained of by Simmons was "similar to the aiding and abetting instruction" it approved in Kelly v. State, 493 So.2d 356, 359 (Miss. 1986). The Court also stated that other instructions given to the jury provided that the State had to prove every element of the crime beyond a reasonable doubt. The Court concluded that the jury was properly instructed on the law, when the instructions were read together. See also Davis v. State, 586 So.2d 817, 821 (Miss. 1991) (Court upheld instruction almost identical to S-8 in the case at bar).
Nevertheless, while similar instructions have been approved in Simmons, Kelly, and Davis, the jury was improperly instructed in the case sub judice with regard to instruction S-8. However, when read together, these instructions adequately informed the jury of the law making the improper instruction a harmless error. See also Gray v. State, 487 So.2d 1304, 1308 (Miss. 1986) (when instructions are read together, no error can be predicated on failure of one instruction to set out properly a necessary element of the crime, where the element was included correctly in other instructions).
In sum, under the logic of Gray, Hornburger's argument does not warrant a reversal. The jury was improperly instructed, and the court did err in submitting instruction S-8 to the jury, but it was harmless at most.

IV.

CONCLUSION
Hornburger's argument that instruction S-8 permitted the jury to find him guilty of burglary if he committed only one element of the crime, without finding him guilty of every element of the crime, does not warrant a reversal here as it was a harmless error. Other instructions properly informed the jury that the State was required to prove each element of the crime. Jury instructions must be read together. While this Court rejected similar arguments to Hornburger's in Simmons and Davis, we find it improper *516 here yet harmless. Accordingly, Hornburger's conviction is affirmed.
CONVICTION OF BURGLARY AND SENTENCE OF SEVEN (7) YEARS IN THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH CONDITIONS AFFIRMED. SAID SENTENCE SHALL RUN CONSECUTIVELY WITH ANY AND ALL OTHER SENTENCES PREVIOUSLY IMPOSED.
HAWKINS, C.J., PRATHER, P.J., SULLIVAN, PITTMAN and SMITH, JJ., concur.
McRAE, J., concurs in result only.
BANKS, J., dissents with separate written opinion joined by DAN M. LEE, P.J.
BANKS, Justice, dissenting:
I agree with the majority that instruction S-8 is flawed. I cannot agree that the flaw is cured by reading the instructions as a whole. I therefore dissent.
As I noted in my dissent in Carr v. State, No. 90-01106, ___ So.2d ___ [1995 WL 38277] (Miss. Jan. 1995) our prior approval of the language found in instruction S-8 notwithstanding, the language is misleading and must be corrected.
The problem that I see is that the second part of the instruction, which attempts to apply the principle of law stated in the first clause to factual findings by the jury, leaves out a finding essential to the application of the principle enunciated. The principle of law is that "each person present at the time, and consenting to and encouraging the commission of crime" who "knowingly, wilfully, and feloniously" does an act which is an element of or connected with the crime or leads to its commission is guilty as a principle actor. In the second part of the instruction here in question, applying the principle of law to facts to be found, left out are the requirements that Carr be "present" and "consenting to" and "encouraging" the crime. It even leaves out the requirement that he "knowingly" perform an act. Because of these omissions I find the instruction fatally flawed.
Carr v. State, No. 90-DP-01106, slip op. at 6, (Miss. 1995) (Banks, J., dissenting).
Here, the majority correctly recognizes the flaw, but nevertheless, affirms. It is clear, however, that Hornburger admits to some acts which were a part of the crime but claims that he did so unknowingly. It is also clear that the jury found the instructions confusing to the point of seeking guidance. Under the circumstances, I cannot agree that the faulty instruction, specifically dealing with aiding and abetting, was cured by the presence of the more general instruction. As urged by the defendant, the jury was placed in a position of accepting one or the other instruction. Hornburger is entitled to a new trial before a properly instructed jury. Brazile v. State, 514 So.2d 325, 326 (Miss. 1987) (reversed because of inaccurate and confusing jury instruction).
DAN M. LEE, P.J., joins this opinion.
NOTES
[1] Photographs of the building showing the pried-open door were admitted into evidence.
[2] Polite also identified in photos introduced into evidence a white cased jig-saw, and a silver timing light.
[3] Lucas also testified that he gave the mother of his child five dollars for the child's camping trip.
[4] Lucas stated that he had never told Horn that he had permission to take anything from the shop.
[5] Hornburger testified that he told Harris, "it's a nice box."
[6] It is unclear whether Gilliam accompanied Horn. It is also unclear who Gilliam is. Perhaps he is Deputy Williams.
[7] About one and one-half hours after retiring to consider their verdict, the jury sent a note to the judge stating, "Your Honor, we need an interpretation of one of the charges." The judge responded, "The Court cannot instruct you any further."
[8] The State also argues that Hornburger is procedurally barred from raising the argument that instructions S-8 and S-1-A conflict, because he failed to raise this claim at trial.