763 So.2d 216 (2000)
Donald Eric BARNES, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1998-KA-01335-COA.
Court of Appeals of Mississippi.
June 27, 2000.
*217 Mack A. Bethea, James L. Davis, III, Gulfport, Attorneys for Appellant.
Office of the Attorney General by Billy L. Gore, Attorneys for Appellee.
BEFORE SOUTHWICK, P.J., LEE AND THOMAS, JJ.
THOMAS, J., for the Court:
¶ 1. The Harrison County Circuit Court convicted Donald Eric Barnes of capital murder and sentenced him to life imprisonment. On appeal, Barnes alleges (1) the trial court erred in modifying his jury instruction on the defense theory of abandonment, (2) the trial court erred in granting the State's aiding and abetting instruction, (3) the trial court erred in overruling his objections to the introduction of his palm prints into evidence, (4) the trial court improperly sentenced him to life imprisonment without the possibility of parole rather than life imprisonment with eligibility for parole, and (5) the cumulative effect of the errors requires reversal. We reject Barnes's contentions and affirm.

*218 FACTS
¶ 2. At approximately 6:00 a.m. on October 19, 1994, Carol Ann Hill reported to work at the Broadwater Inn in Biloxi, Mississippi. As Hill pulled into the parking lot, she noticed a body lying on the ground and quickly realized that it was sixty-five year old Annette Hebert, who worked as a waitress in the hotel restaurant. Hebert had suffered massive head injuries and paramedics pronounced her dead at the scene.
¶ 3. Law enforcement authorities received information that Donald Eric Barnes was a possible suspect and compared a palm print obtained from Barnes following a prior arrest with a palm print recovered from the victim's eyeglasses. The Mississippi Crime Laboratory determined that the prints matched, and Barnes was arrested. Following his arrest, Barnes gave a statement in which he informed police that he, O.D. Smith, and Albert Gwin were at a nightclub in Moss Point on the night of the murder. He admitted that they needed money and decided to rob someone. According to Barnes, "[e]verything was slow around Pascagoula and Moss Point.... So we decided to come on drive to Biloxi." The group stopped at the Broadwater Inn and relieved themselves in the parking lot. The victim, Annette Hebert, arrived shortly thereafter and went inside the hotel. Because Hebert left her automobile's "park lights" on, the group surmised that she would be returning soon. When Hebert returned, Barnes grabbed her from behind; however, he claimed that when "she started screaming, I let her go and went and jumped back in the car." Barnes stated that Smith then began beating Hebert with a pipe.
¶ 4. Barnes was charged with capital murder. Following a trial held in the Harrison County Circuit Court on change of venue to Hancock County, the jury convicted Barnes of capital murder but was unable to agree on a sentence. The trial judge then sentenced Barnes to life imprisonment.

DISCUSSION

I. WHETHER THE TRIAL COURT ERRED IN MODIFYING BARNES'S ABANDONMENT INSTRUCTION.
¶ 5. Barnes claims that the trial court erred in modifying his proposed instruction on abandonment. Barnes's proposed instruction read as follows:
If you find from the evidence, beyond a reasonable doubt, that Donald Eric Barnes freely and voluntarily abandoned his intent to commit the crime of robbery after he had an intent to commit a particular crime and performed a direct ineffectual act toward its commission and that he failed to consummate its commission, then you should find the defendant not guilty.
As modified, Instruction DG-26A provided:
If you find from the evidence that DONALD ERIC BARNES freely and voluntarily abandoned his intent to commit the crime of robbery before the Defendant performed any overt act toward commission of that crime, and if you further believe that there was not an outside cause prompting abandonment, on the part of the victim or otherwise, then you shall find the defendant Not Guilty. (emphasis added).
Barnes specifically objected to the addition of the language "and if you further believe that there was not an outside cause prompting abandonment, on the part of the victim or otherwise...." Barnes contends that the additional language is not an element of abandonment.
¶ 6. The jury instruction, as modified, is a correct statement of the law.
Abandonment is a defense if the attempt to commit a crime is freely and voluntarily abandoned before the act is put in process of final execution, if there is no outside cause prompting the abandonment. *219 On the other hand, a voluntary abandonment of an attempt which has proceeded beyond mere preparation will not bar a conviction for the attempt.
Bucklew v. State, 206 So.2d 200, 204 (Miss. 1968). In Alexander v. State, 520 So.2d 127, 128 (Miss.1988), the defendant entered the victim's hospital room and attempted to rape her. He fled only after she was able to summon help by pressing the nurse's buzzer and speaking the word "help." Id. The defendant argued that he had voluntarily fled the room and thus had abandoned his attempt to rape the victim. Id. at 130. The supreme court found that,
[t]he victim's testimony shows that the appellant ceased his actions only after the victim managed to press the buzzer alerting the nurse.... [T]his Court stresses the fact that the evidence supports the conclusion that appellant's failure to rape the victim was due to her resistance and ability to sound the alarm, rather to any abandonment on appellant's part.
Id. When a jury instruction correctly states the law, and there is evidence to justify it, granting the instruction is not error. Weaver v. State, 497 So.2d 1089, 1095 (Miss.1986). We find no error.
¶ 7. Barnes also argues that because he abandoned the robbery before it escalated into murder, he should not be liable for capital murder. He contends that the instruction was improper because "it told the jury that it had to find that Barnes abandoned his intent to commit the robbery before any overt act toward commission of that crime before they could find him not guilty of capital murder." Barnes claims that the jury should have been allowed to acquit him if he abandoned the robbery prior to completion of the robbery and prior to the murder.
¶ 8. No assignment of error based on the giving of an instruction to the jury will be considered on appeal unless specific objection was made to the instruction in the trial court stating the particular ground or grounds for such objection. Watson v. State, 483 So.2d 1326, 1329 (Miss.1986). Further, on appeal, a party may not argue that an instruction was erroneous for a reason other than the reason assigned on objection to the instruction at trial. Young v. Robinson, 538 So.2d 781, 782 (Miss.1989). At trial, Barnes's ground for objection to the modification of Instruction D-26A was the addition of the language "and if you further believe that there was not an outside cause prompting the abandonment, on the part of the victim or otherwise...." He did not object to the instruction on the ground that it did not allow the jury to acquit him of capital murder if they found he abandoned the underlying felony, robbery, prior to its completion. Because Barnes objected to the instruction on a different ground from that now presented to this Court, review of any error is waived.

II. WHETHER THE TRIAL COURT ERRED IN GRANTING THE STATE'S AIDING AND ABETTING INSTRUCTION.
¶ 9. Barnes claims that the trial court erred in granting the State's aiding and abetting instruction, in violation of Hornburger v. State, 650 So.2d 510 (Miss. 1995). Barnes contends that the instruction allowed the jury to convict him of capital murder in the absence of proof of every element of the crime beyond a reasonable doubt. Instruction S-2A reads as follows:
The Court instructs the jury that each person present at the time, and consenting to and encouraging the commission of a crime, and knowingly, willfully, and feloniously doing any acts which are elements of the crime or immediately connected with it, or leading to its commission, is as much a principal as if he had with his own hand committed the whole offense; and if you believe from the evidence beyond a reasonable doubt, that the Defendant, Donald Eric Barnes, did willfully, unlawfully and feloniously do any acts which are elements of the *220 crime with which he is charged or immediately connected with it or leading to its commission, then and in that event you should find the defendant guilty of that crime as the case may be.(emphasis added).
Barnes objects to the language which allows the jury to convict him upon finding that he did "any acts which are elements of the crime...." He contends that although the trial judge purported to cure the Hornburger problem by changing the instruction from "any act which is an element of the crime" to "any acts which are elements of the crime," the instruction is still improper.
¶ 10. In Hornburger, the supreme court found a similar instruction improper because it allowed the jury to convict if it found that the defendant had committed any act which was an element of the crime or led to its commission without first finding that the State had proven each element of the crime beyond a reasonable doubt. Id. at 515-16. The objectionable instruction provided that:
The Court instructs the Jury that each person present at the time, and consenting to and encouraging the commission of a crime, and knowingly, willfully and feloniously doing any act which is an element of the crime or immediately connected with it, or leading to its commission, is as much a principal as if he had with his own hand committed the whole offense; and if you find from the evidence beyond a reasonable doubt that the defendant, Gregory Hornburger, a/k/a Greg Hornburger, did willfully, knowingly, unlawfully and feloniously do any act which is an element of the crime of burglary of a building, or leading to its commission, then and in that event, you should find the defendant guilty as charged.
Id. at 514. (emphasis added). Because the other jury instructions adequately informed the jury of the requirement that the State prove each element of the crime beyond a reasonable doubt, the court held that the error in granting the instruction was harmless. Id. at 515.
¶ 11. We find that any error in granting the instruction was cured by the other jury instructions. Instruction S-1 sets out the elements of capital murder and requires a finding by the jury that the State prove the elements "beyond a reasonable doubt...." Further, Instruction S-5A instructs the jury on the elements of the underlying crime of robbery. Finally, Barnes's own instruction, DG-15A, provides that "[i]f the State has failed to prove any one of the essential elements of the crime of Capital Murder, then you shall find the defendant, DONALD ERIC BARNES, Not Guilty of Capital Murder or Murder."
¶ 12. All instructions are to be read as a whole in determining whether the jury was correctly charged by the trial court. Berry v. State, 728 So.2d 568 (¶ 8) (Miss.1999). Therefore, we find that even if the trial court erred in granting the aiding and abetting instruction, S-2A, it did not constitute reversible error. Berry excepts from that general rule a situation in which an instruction is potentially confusing to the jury. Id. at 571. In Berry, the Court found that the instruction on aiding and abetting might be viewed by jurors as freestanding so that it canceled the other instructions. Id. at 571. Here, however, the instruction is sufficiently clear and the proof of robbery and murder all but unchallenged, that we find no risk that the jurors were confused. Other instructions accurately informed the jurors about the elements of the crime. The only real issue was abandonment, and we have just held that the instruction on that defense was accurate. Thus what was left to explain was aiding and abetting lawwas Barnes present with the proper intent, encouraging the commission of the crime, and having committed at least one act leading to its commission? Berry discusses a generic problem that is to be examined case by case. In this case, we find no prospect that the jurors were confused.

*221 III. WHETHER THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE THE PALM PRINT.
¶ 13. Barnes claims that the trial court erred in admitting his palm print into evidence. Barnes was identified as a participant in the crime based on a palm print obtained by the Pascagoula Police following Barnes's prior arrest on June 28, 1990. The 1990 palm print matched the palm print recovered from the victim's eyeglasses. Barnes argues that the 1990 palm print should have been excluded from the evidence because the State failed to establish that it was taken pursuant to a lawful arrest. Alternatively, Barnes alleges that the State committed a discovery violation by failing to notify him that the 1990 palm print was taken pursuant to a lawful arrest. Barnes further contends that because the 1990 palm print was inadmissible, the 1995 palm print should have been excluded from evidence as well. He claims that his 1995 arrest for capital murder was improper because the police arrested him for the sole purpose of obtaining his palm print for a possible match with the latent print recovered from the victim's glasses at the crime scene, in violation of the rule set forth in Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969). We find Barnes's contentions concerning the admissibility of the 1990 palm print are without merit. Therefore, Barnes's assignment of error with respect to the admissibility of the 1995 palm print is irrelevant.
¶ 14. At trial, Barnes objected to introduction of the palm print evidence. The State explained that Scott Ferguson of the Pascagoula Police Department, the officer who took Barnes's palm print in 1990, was prepared to testify as to the circumstances surrounding it. According to the State, Ferguson then placed Barnes's palm print in a "mug and fingerprint file." During the course of the investigation, John Morenski, a Pascagoula Police Officer, reviewed the mug and fingerprint file and recognized Barnes. At the request of the Biloxi Police Department, he removed the palm print from the file and turned it over to Investigator Shaw of the Biloxi Police Department who in turn gave it to Inspector Burris. The palm print was then forwarded to the Mississippi Crime Lab where it was discovered to be a match with the palm print recovered from the crime scene.
¶ 15. To prevent the jury from hearing the testimony regarding Barnes's 1990 arrest, defense counsel proposed to stipulate that the 1990 prints were simply "existing" prints which were compared to those found on the victim's glasses. Barnes's attorney stated, "I don't want it to be a known print, just a print. That makes it sound like he has known fingerprints. But just a print. We've got a fingerprint of the defendant." The State agreed that Officer Burris would simply testify that "he obtained a print and there was a match."
¶ 16. In overruling Barnes's objection to admission of the palm print, the trial judge relied upon Nixon v. State, 336 So.2d 742, 744 (Miss.1976), for the proposition that the presumption of validity of the acts of law enforcement officials extends to custody of fingerprint evidence. In Nixon, the defendant was accused of robbing a liquor store. Id. Police officers lifted a latent fingerprint from the cash register and acting upon a tip compared it to a known fingerprint of Nixon contained in police files. Id. at 743. The fingerprints were sent to the FBI and determined to be from the same person. Id. Nixon objected to introduction of the fingerprints into evidence, claiming that the State was required to prove the lawfulness of his arrest when the known fingerprints were obtained. Id. at 744. The supreme court found that the fingerprint evidence was admissible, as
[t]he appellant was afforded every opportunity to substantiate his suggestion that probable cause did not exist for the arrest, but declined to do so, leaving the issue resting upon the premise `the state hasn't proved that the print was taken *222 as a result of a lawful arrest and for the additional reason that he was a minor.'
Id.
¶ 17. In the instant case, Barnes likewise relies upon the bare assertion that "the State hasn't proved that the print was taken as a result of a lawful arrest...." This is insufficient to overcome the presumption of regularity which extends to the acts of law enforcement officials. Moreover, the State was prepared to prove that the palm print was taken pursuant to a lawful arrest on June 28, 1990. However, rather than have the jury hear the facts surrounding Barnes's prior arrest, defense counsel preferred to stipulate that the print was "just a print."
¶ 18. As for the alleged discovery violation, defense counsel argued at trial that he was unaware that Barnes had actually been arrested on June 28, 1990. When questioned by the trial judge, Barnes's attorney admitted that the State had provided him the print in discovery. However, he maintained "[w]hen I noticed the date and I got the arrest reports from them, I realized that he was never arrested on that date.... And now, here it is the day of trial and they come in here showing me that he was arrested." The trial judge overruled Barnes's objection to introduction of the palm print, finding that it had "been discussed from the word go as far as this case is concerned that that was the piece of evidence that would place the defendant at the scene."
¶ 19. The record clearly shows that Barnes received a copy of the palm print in discovery. The palm print card was dated June 28, 1990, and the State informed Barnes that the print card had come from the Pascagoula Police Department. Additionally, the print card bore the signatures of both Barnes and Scott Ferguson, the officer who took the palm print from Barnes in 1990. The alleged discovery violation is based on Barnes's assumption that because the arrest did not show up on his arrest record, defense counsel was unaware that Barnes had actually been arrested on that date. The purpose of discovery is to avoid unfair surprise or trial by ambush. Ghoston v. State, 645 So.2d 936, 939 (Miss.1994). Barnes himself was in the best position to know if he had in fact been arrested on June 28, 1990. No discovery violation occurred.

IV. WHETHER BARNES IS ELIGIBLE FOR PAROLE.
¶ 20. Barnes contends that Mississippi's capital murder sentencing statutes are ambiguous. He notes that although the trial judge sentenced him to life imprisonment, it is unclear whether his sentence was life imprisonment with or without the possibility of parole. He argues any ambiguity in the sentencing statutes should be resolved in his favor. McLamb v. State, 456 So.2d 743, 745 (Miss.1984).
¶ 21. Mississippi Code Ann. § 97-3-21 (Rev.1994) provides that "[e]very person who shall be convicted of capital murder shall be sentenced to (a) death; (b) to imprisonment for life in the State Penitentiary without parole; or (c) to imprisonment for life in the State Penitentiary with eligibility for parole as provided in Section 47-7-3(1)(f)." The Mississippi Supreme Court has recognized that "the plain meaning of the language in § 97-3-21 indicates that the legislature intended any defendant whose pretrial, trial, or sentencing proceedings commenced after July 1, 1994 to have his sentencing juries instructed on the sentencing options of life, life without parole, or death." West v. State, 725 So.2d 872, 878 (Miss.1998).
¶ 22. The jury was given the option of sentencing Barnes to life, life imprisonment without parole, or death pursuant to Miss.Code Ann. § 99-19-101 (Rev.1994). They were unable to agree on a verdict, and the trial judge sentenced Barnes to life imprisonment in accordance with Miss. Code Ann. § 99-19-103 (Rev.1994) which provides "[i]f the jury cannot, within a reasonable time, agree as to punishment, the judge shall dismiss the jury and impose *223 a sentence of imprisonment for life." Although Miss.Code Ann. § 97-3-21 (Rev. 1994), provides that the jury be given the sentencing options of death, life without parole or life with parole as provided in Miss.Code Ann. § 47-7-3(1)(f)(Supp.1999), in reality a life sentence imposed after June 30, 1995, automatically means life without parole because Miss.Code Ann. § 47-7-3(1)(f) (Supp.1999), was amended effective June 30, 1995, to provide that no person shall be eligible for parole who is charged, tried, convicted and sentenced to life imprisonment under Miss.Code Ann. § 99-19-101(Rev.1994). By operation of the amended parole section, Barnes life sentence is automatically one without parole. Pham v. State, 716 So.2d 1100, 1103 (Miss.1998).

VI. WHETHER THE CUMULATIVE EFFECT OF THE ERRORS MANDATES REVERSAL.
¶ 23. Though Barnes styles this assignment of error under the heading "The verdict is contrary to the law and evidence" he actually argues that the cumulative effect of the erroneous jury instructions requires reversal. Accordingly, we do not address the weight and sufficiency of the evidence against Barnes because he does not raise the issue. Failure to cite any authority may be treated as a procedural bar, and this Court is under no obligation to consider the assignment. Weaver v. State, 713 So.2d 860, 863 (Miss. 1997).
¶ 24. We find no merit in Barnes's contention that the cumulative effect of the evidence requires reversal. "When the combination of specific errors, while harmless in each instance, accrued to such an extent that a defendant was denied a fair trial, this Court will reverse for cumulative error." Hughes v. State, 735 So.2d 238 (¶ 199) (Miss.1999). However, where "there was no reversible error in any part, so there is no reversible error to the whole." McFee v. State, 511 So.2d 130, 136 (Miss.1987).
¶ 25. Barnes fails to assert any assignments of error containing actual error on the part of the trial judge. This Court finds that this case should not be reversed based upon cumulative error.
¶ 26. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT ON CHANGE OF VENUE TO HANCOCK COUNTY OF CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, AND MOORE, JJ., CONCUR. PAYNE, J., NOT PARTICIPATING.