CHANDLER, J.,
for the Court.
¶ 1. Travis L. Chambers was convicted for the crime of sale of cocaine within fifteen hundred feet of a church in Waynesboro, Mississippi. Chambers was sentenced to a term of twenty years in the custody of the Mississippi Department of Corrections as a prior convicted felon. Following the trial, Chambers’ motions for a JNOV or in the alternative, a new trial were denied by the trial court. Feeling aggrieved, Chambers appeals the following errors:
I.THE DISTRICT ATTORNEY VIOLATED BATSON BY USING HIS PEREMPTORY CHALLENGES TO PURPOSEFULLY STRIKE AFRICAN AMERICANS FROM THE JURY POOL, EVEN THOUGH THE RACE NEUTRAL REASONS GIVEN FOR THE STRIKES APPLIED TO WHITES WHOM THE STATE ACCEPTED.
II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ALLOWING THE STATE OF MISSISSIPPI TO INTRODUCE THE ALLEGED COCAINE INTO EVIDENCE OVER THE OBJECTION OF THE DEFENDANT.
III. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO GRANT A DIRECTED VERDICT AND THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 2. Finding the issues raised by Chambers without merit, we affirm the trial court’s rulings.
FACTS
¶ 3. On September 12, 2001, undercover officer Chad McElvin and confidential informant Karen Gibbs met in Wayne County, Mississippi in order to purchase narcotics from drug violators in Waynesboro, Mississippi. Gibbs’ automobile was wired with audio and video equipment in order to record the transactions. As Gibbs turned down Central Avenue in Waynesboro, Mississippi three African American males approached the automobile and offered to sell them some crack cocaine. Two males each gave Gibbs a rock-like substance in exchange for forty dollars. McElvin and Gibbs left Central Avenue and proceeded to a post-buy location where they handed the substances to Officer Martin Over-street, who is the Commander of the South Mississippi Narcotics Task Force.
¶ 4. The audio and video tapes were then removed from the automobile. The videotape was later shown to another Waynes- *155 boro police officer, Leonard Frost, who viewed the tape, and identified Chambers as a seller of the substance. Frost testified that he knew Chambers and his parents from his years on the police force which enabled Frost to identify Chambers on the videotape. The undercover officer, Chad McElvin, also identified Chambers as a seller of the illegal substances through a photographic lineup. Officer Overstreet testified that the drugs were sold within a tenth of a mile of a church on Central Avenue.
¶ 5. Chambers was tried and convicted for sale of cocaine within fifteen hundred feet of a church. He was sentenced to serve a term of twenty years in the Mississippi Department of Corrections.
I. DID THE DISTRICT ATTORNEY VIOLATE BATSON BY USING HIS PEREMPTORY CHALLENGES TO PURPOSEFULLY STRIKE AFRICAN AMERICANS FROM THE JURY POOL, EVEN THOUGH THE RACE NEUTRAL REASONS GIVEN FOR THE STRIKES APPLIED TO WHITES WHOM THE STATE ACCEPTED?
¶ 6. Chambers claims that the proscriptions against using peremptory jury challenges for racially-motivated reasons, as announced in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), were violated when the State used four of its permitted six challenges to exclude African American jurors. Chambers argues that the race-neutral reasons offered by the State were a pretext to hide the State’s true purpose of excluding African American jurors. During voir dire at Chambers’ trial, both Caucasian and African American jurors answered questions that they had relatives in their families who were prior convicted felons or had pending felony charges. Chambers argues that the striking of African American jurors on the basis of a prior felony record violated Batson because Caucasian jurors whose family members included felons were not struck from the panel.
¶ 7. Batson provides the court with procedures to follow in detecting the use of peremptory challenges to remove members of an identified racial group from jury service based on their racial classification. Batson, 476 U.S. at 96, 106 S.Ct. 1712. Traditionally, under Batson, in order for the defendant to raise a prima facie case that the prosecution has improperly struck a potential juror on the basis, of race, it must be shown (1) that he is “a member of a cognizable racial group,” and that the prosecution has “exercised peremptory challenges to remove from the venire members of the defendant’s race”; (2) that the defendant is entitled to rely on the fact that peremptory challenges allow “those to discriminate who are of a mind to discriminate”; and (3) that “these facts and any other relevant circumstances raise an inference that the [State] used that practice to exclude the veniremen from the petit jury on account of their race.” Id. The trial court should consider all relevant circumstances in determining whether the defendant has made the requisite prima facie showing of discrimination. Id. If the trial court determines that the defendant has made a prima facie showing of discrimination, the burden then shifts to the State to announce race-neutral reasons for the exclusion of those people from the venire. Id. at 97, 106 S.Ct. 1712.
¶ 8. This Court points out that the Mississippi Supreme Court has adopted the United States Supreme Court’s decision in Powers v. Ohio, 499 U.S. 400, 415, 111 S.Ct. 1364, 113 L.Ed.2d 411, (1991), which found contrary to Batson, that people of the same race are not required for racially based challenges. In Puckett v. State 788 *156 So.2d 752 (¶ 10) (Miss.2001) the court wrote:
that a defendant may object to racially-based exercises of peremptory challenges whether or not the excluded jurors and the defendant are of the same race. This holding, in essence, eliminates the first two factors required by Batson. Bush v. State, 585 So.2d 1262, 1267-68 (Miss.1991). Thus, the pivotal question is “whether the opponent of the strike has met the burden of showing that proponent has engaged in a pattern of strikes based on race or gender, or in other words ‘the totality of the relevant facts gives rise to an inference of discriminatory purpose.’ ” Randall v. State, 716 So.2d 584, 587 (Miss.1998) (quoting Batson, 476 U.S. at 94, 106 S.Ct. at 1721).
¶ 9. The defendant is also allowed to rebut the reasons offered by the State. Bush v. State, 585 So.2d 1262, 1268 (Miss. 1991). However, if the defendant offers no rebuttal, the trial court is to only examine the reasons given by the State. Id. The Mississippi Supreme Court requires the trial court to make findings of fact on the record to support the court’s ultimate ruling on a Batson challenge. Hatten v. State, 628 So.2d 294, 298 (Miss.1993). When these findings are subjected to review on appeal, the standard for appellate review is that the appellate court may not intercede unless the trial court’s findings appear clearly erroneous or against the overwhelming weight of the evidence. Id. at 299.
¶ 10. The Court now turns to the facts of this particular case. Because Chambers’ case was not a capital case, the State was given six peremptory challenges in the selection of a jury. The State used five challenges, four of which were exercised against African American venire members. After the State had exercised peremptory challenges to remove the African American venire members, the trial judge asked the State to give its reasons for striking those potential jurors. The State offered the following reasons for those four prospective jurors.
¶ 11. Prospective juror number three was struck as a potential juror by the State because Chambers’ attorney had represented her daughter in a legal matter. The legal representation by defense counsel occurred approximately a year before Chambers’ trial. The defense offered no rebuttal to the State’s reason for striking this person.
¶ 12. Prospective juror number six or a member of her immediate family had a pending felony charge in Wayne County, Mississippi and the Waynesboro Police were involved. The State argued that it did not want a juror on the panel with a pending felony drug charge. The defense offered no rebuttal to the State’s reason for dismissing the prospective juror.
¶ 13. Prospective juror number sixteen gave no verbal comments to the questions asked during the voir dire of the jury. The State used a strike against her based on recommendations from local law enforcement. The local officers knew this prospective juror had numerous relatives who had been charged, convicted or who were suspected of drug activity. The defense offered no rebuttal other than questioning whether the State had done the same thing with the Caucasian panel members. The trial judge accepted the reasons given by the State as neutral and nonpre-textual.
¶ 14. Prospective juror number twenty-one had a family member who was convicted in Wayne County, Mississippi of felony DUI third offense. Law enforcement informed the State that this prospective juror allegedly had relatives in the illegal *157 drug business. In response, the defense argued that the State had allowed juror number twenty to remain on the panel even though his relative was convicted of a crime in Wayne County, Mississippi approximately two years earlier. The State responded that law enforcement recommended choosing number twenty despite the family member’s felony charge. The defense offered no rebuttal to the response given by the State.
¶ 15. Prospective juror twenty-five is a Caucasian who was chosen as an alternate for the jury. Her family member or close friend was convicted of burglary in Wayne County, Mississippi. She said she could be impartial and stated that she had no hard feelings against law enforcement. The defense offered no rebuttal to the tendering of number twenty-five as an alternate to the jury.
¶ 16. Prospective juror number twenty-seven is a Caucasian who was chosen as an alternate for the jury. Her family member or close Mend was convicted of a drug crime in Oklahoma. She said she could be impartial and believed the drug offender was treated fairly by law enforcement. Defense counsel offered no rebuttal to the tendering of number twenty-five as an alternate juror.
¶ 17. Chambers asks this Court to reverse the trial court’s rulings as to the four prospective jurors. Therefore, the facts and circumstances must raise an inference that the prosecutor used his peremptory challenges for a discriminatory purpose. Even though the State used only four of the six strikes available, African Americans remained as prospective jurors. As finally selected, the jury panel included Caucasians and African Americans.
¶ 18. The defendant failed to show the State used the challenges in a discriminatory manner. The facts reveal two of the individuals were excluded because they had a pending felony charge or a family member who had a felony charge that involved drugs. The other person was struck because Chambers’ counsel had represented her daughter in an earlier proceeding.
¶ 19. Although three Caucasians remained on the jury panel as jufors or alternates, there is no evidence the State’s selection of these individuals was pretextual. As previously stated, one person was allowed to serve on the jury panel although he had a family member with a felony record. However, the State explained that law enforcement recommended selecting that person even though one of his family members had a felony conviction. The district attorney stated that he relies on local law enforcement to aid in the selection of jurors because he does not live in Waynesboro, Mississippi. Chambers’ counsel offered no rebuttal to the reason given by the State for selecting this person.
¶ 20. The trial court asked each party if there was any additional information to put in the record before the trial began. Chambers’ counsel proceeded to argue a motion in limine and at no time was a challenge raised regarding the selection of the alternate jurors. The two alternate jurors had relatives with felony convictions against them, but Chambers made no objection to these jurors serving as alternates. Although the two alternate jurors had family members who were previously convicted of a crime, none of the relatives had pending charges nor was there any evidence the relatives were presently involved in the illegal drug business. The alternate jurors were not required to replace a selected jury member.
¶ 21. Our standard of review requires a reversal only if the factual findings of the trial judge are “clearly erroneous or *158 against the overwhelming weight of the evidence.” Tanner v. State, 764 So.2d 385 (¶ 14) (Miss.2000). Any determination made by a trial judge under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69, (1986), is accorded great deference because it is “based, in a large part, on credibility.” Coleman v. State, 697 So.2d 777, 785 (Miss.1997). Chambers failed to establish any inference of purposeful racial discrimination. “The law does not proscribe the mere incidental exclusion of blacks from a jury.” Govan v. State, 591 So.2d 428, 430 (Miss.1991). After reviewing the record as a whole there are no facts which would show the State excluded jurors based on race. This issue is without merit.
II. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY ALLOWING THE STATE OF MISSISSIPPI TO INTRODUCE THE ALLEGED COCAINE INTO EVIDENCE OVER THE OBJECTION OF THE DEFENDANT?
¶22. Chambers argues that the cocaine and the laboratory test results should not be admissible. First, he points out that the crime lab assistant, Brandi Goodman, testified that she tested two rocks of cocaine. However, the evidence submission form from the crime laboratory stated that Chambers’ evidence was in a “sealed clear plastic bag containing an off-white colored rock like substance.” Chambers argues there is no valid chain of custody because the crime lab submission form indicated one rock while the testimony at trial indicated two rocks. Second, Chambers points out that the State’s undercover officer Chad McElvin, who was with the confidential informant when the actual buy was made, testified that he purchased two rocks of what he believed to be crack cocaine and Martin Overstreet, Commander of the South Mississippi Narcotics Task Force, testified that he submitted two pieces of rock cocaine to the crime lab. The discrepancies in the number of rocks submitted, Chambers argues, create a presumption that the evidence was tampered with in some way, thus destroying the probative value of the evidence.
 ¶ 23. Admissibility of evidence, in the context of the issue now before us, is governed by the provisions of Mississippi Rule of Evidence 901(a), which requires the proponent to produce “evidence sufficient to support a finding that the matter in question is what its proponents claim.” M.R.E. 901(a). The pertinent question regarding chain of custody is “whether there is any indication of tampering or substitution of evidence.” Wells v. State, 604 So.2d 271, 277 (Miss.1992). Issues involving the chain of custody of evidence are left to the sound discretion of the trial court. Doby v. State, 532 So.2d 584, 588 (Miss.1988). An appellate court “will not reverse the trial court’s ruling except where this discretion has been ‘so abused as to be prejudicial to the defendant.’ ” Lambert v. State, 462 So.2d 308, 312 (Miss. 1984). The record reveals no such abuse of discretion.
¶24. The State contends the material produced at trial was the same material its undercover agent purchased from a person identified as Chambers. Through witnesses the State showed the chain of custody from the undercover agent, Chad McElvin, to the head of the narcotics task force, Martin Overstreet, who sealed the material and placed it into a secure evidence vault at the Mississippi Task Force Narcotics Office. From there, Officer Overstreet retrieved the material in the same sealed bag and delivered the material to the state crime lab, where lab employee, Jamie Bush, signed for receipt of the sealed material. This lab employee did not testify at trial. Rather, another *159 lab employee, Brandi Goodman, who did the actual testing of the substance testified that she received the bag in a sealed condition and that she broke the seal for purposes of retrieving the material for chemical analysis, after which she re-sealed the remaining material. Subsequent testimony showed this resealed material was returned to Wayne County in the form in which it was offered into evidence at trial. There is a presumption of regularity favoring chain of custody conducted by police officers. Barnes v. State, 763 So.2d 216 (¶ 16) (Miss.Ct.App.2000).
¶ 25. As a part of the chain of custody, Chambers questions the number of cocaine rocks obtained during the drug transaction when compared to the evidence submission form of the crime lab. He argues there is a question as to whether the cocaine substance here is the same as that obtained during the actual drug transaction with undercover officer Chad McElvin. Chambers asserts that the evidence may have been commingled or confused with evidence obtained from other drug transactions.
¶ 26. The record reflects that the substance submitted to the lab was sealed and marked for identification. The seal and the identifying marks were intact when received at the lab, and showed no signs of tampering. Because there was no indication of tampering, the trial court correctly admitted the evidence. Goodman testified that she viewed the evidence bag shortly before taking the stand and noticed that it contained three small rocks. A logical explanation is the rocks broke into multiple pieces during the handling, testing and transporting of the substance.
¶ 27. The State met the requirement of Rule 901(a) with substantial proof the material tested at the crime laboratory was the same material obtained by the undercover agent and Martin Overstreet on September 12, 2001. The defendant’s claim that the physical evidence or the test results should have been excluded is without merit.
III. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY FAILING TO GRANT A DIRECTED VERDICT AND WAS THE VERDICT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 28. Motions for directed verdict and motions for JNOV are for the purpose of challenging the legal sufficiency of the evidence. Noe v. State, 616 So.2d 298, 302 (Miss.1993); Strong v. State, 600 So.2d 199, 201 (Miss.1992). In reviewing the sufficiency of the evidence questions, the court is required to view the evidence in the light favorable to the State, giving it the benefit of all reasonable inferences which may be drawn from the evidence, and accepting as true that evidence which supports guilt. McClain v. State, 625 So.2d 774, 778 (Miss.1993). It must not weigh the evidence or its credibility as that is the province of the jury. Id. The court may only reverse if the evidence is such that fair-minded jurors could only find the defendant not guilty. Id.
¶ 29. According to the above standard of review, this Court looks at the evidence in the light most favorable to the verdict. The evidence supports a finding that Chambers committed the crime of selling cocaine within fifteen hundred feet of a church. Chambers was identified by the undercover officer as one of the persons that sold the cocaine. There is a videotape of the transaction. Two law enforcement officers testified that the drug transaction had occurred within fifteen hundred feet of a church. One officer testified that he measured the distance from the church with the odometer on his car and the other officer said he measured it with an instru *160 ment designed for that purpose. This is sufficient evidence to support the jury’s verdict.
¶30. In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal. As such, if the verdict is against the overwhelming weight of the evidence, then a new trial is proper. Baker v. State, 802 So.2d 77, 81 (¶ 14) (Miss.2001) (quoting Dudley v. State, 719 So.2d 180, 182(¶ 8) (Miss.1998)). Considering all of the evidence in the record and giving the prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence, the jury’s finding that Chambers was guilty of selling cocaine within fifteen hundred feet of a church does not create an unconscionable injustice. Therefore, this issue is without merit.
¶ 31. THE JUDGMENT OF THE WAYNE COUNTY CIRCUIT COURT OF CONVICTION OF SALE OF COCAINE WITHIN 1500 FEET OF A CHURCH AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FINE OF $5,000 IS AFFIRMED. COSTS OF THIS APPEAL ARE TAXED TO WAYNE COUNTY.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, MYERS AND GRIFFIS, JJ., CONCUR. IRVING, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J.